IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRADLEY B. MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:20-cv-759-E-BN |
| | § | |
| VIRGINIA TALLEY DUNN, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Bradley B. Miller, invoking federal question jurisdiction under 28
U.S.C. § 1331, *see* Dkt. No. 3, ¶ 6, brings this *pro se* action against his ex-wife, other
private individuals, two state court judges, two police officers, a private school, Dallas
County, and the City of Dallas, alleging, as applicable to the Court's subject matter
jurisdiction, that the defendants have violated his constitutional rights, *see generally
id.*; *see, e.g., id.*, ¶ 1 ("Plaintiff complains of various willful, systemic deprivations of
fundamental rights guaranteed by both the Texas and Federal Constitutions, and
which same deprivations are civil violations of 42 U.S.C. § 1983 and other statutes
....." (citing provisions of Title 18 of the United States Code and the Texas Penal
Code)).

Miller has moved for leave to proceed *in forma pauperis*. *See* Dkt. No. 4. His
lawsuit has been referred to the undersigned United States magistrate judge under
28 U.S.C. § 636(b) and a standing order of reference from United States District Judge
Ada Brown. And, on April 9, 2020, the Court entered an order concerning its subject

matter jurisdiction [Dkt. No. 8], concluding that,

> [i]n sum, it does not appear that the Court possesses subject matter jurisdiction over this lawsuit. Or, if it does, to the extent that the state proceedings implicated by this action were pending when Miller filed this case, it appears that the Court should stay this action under *Younger[ v. Harris*, 401 U.S. 37, 43-47 (1971)].
>
> But, because Miller is proceeding pro se, the Court will grant him an opportunity to address these concerns and ORDERS that he file no later than May 11, 2020 a written response to this order to show the Court that it has subject matter jurisdiction over this lawsuit and a stay is not appropriate.

*Id.* at 14-15.

Miller timely responded. *See* Dkt. No. 9.

After considering his response, the undersigned enters these findings of fact, conclusions of law, and recommendation that, because Miller has not established that the Court possesses subject matter jurisdiction over this lawsuit, the Court should dismiss it without prejudice.

## Legal Standards

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Bowles v. Russell*, 551 U.S. 205, 212 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) ("Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims."). They must therefore "presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction

rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Correspondingly, all federal courts have an independent duty to examine their own subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) ("Subject-matter limitations ... keep the federal courts within the bounds the Constitution and Congress have prescribed. Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level." (citations omitted)).

Because Miller chose to file his lawsuit in federal court, it is his burden to establish federal jurisdiction. *See Butler v. Dallas Area Rapid Transit*, 762 F. App'x 193, 194 (5th Cir. 2019) (per curiam) ("[A]ssertions [that] are conclusory [ ] are insufficient to support [an] attempt to establish subject-matter jurisdiction." (citing *Evans v. Dillard Univ.*, 672 F. App'x 505, 505-06 (5th Cir. 2017) (per cuiam); *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001))). And if he does not, this lawsuit must be dismissed. *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Since federal jurisdiction is not assumed, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)); *see also MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) ("Because federal courts have limited jurisdiction,

parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." (quoting *Getty Oil*, 841 F.2d at 1259)).

Under their limited jurisdiction, federal courts generally may only hear a case if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332. As applicable here, federal question jurisdiction under Section 1331 "exists when 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983)). "A federal question exists 'if there appears on the face of the complaint some substantial, disputed question of federal law.'" *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)).

## Analysis

Miller's current claims (made in a complaint spanning 140 pages) emanate from protracted family district court proceedings in Dallas County. Other judges of this Court are familiar with the state proceedings, as Miller removed that case to this Court three times:

> On February 13, 2013, Virginia Dunn (Respondent) filed a petition for divorce from Bradley Miller (Petitioner) in the 330th District Court of Dallas County, Texas, and an agreed judgment was entered on April 2, 2014. Respondent subsequently re-opened the suit with a motion to modify the child custody arrangement. On November 17, 2016, Petitioner removed the action to the Dallas Division of the Northern District of Texas, alleging violations of various federal statutes and the United States Constitution by the state court judge. *Dunn v. Miller*, No.

3:16-CV-3213-L, 2016 WL 9651747, at *1 (N.D. Tex. Nov. 18, 2016). The case was sua sponte remanded to the state family court for lack of jurisdiction, and the Fifth Circuit Court of Appeals affirmed the decision on August 17, 2017. *Dunn v. Miller*, 695 F. App'x 799, 800 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 929 (2018).

On September 13, 2017, Respondent filed a motion to enforce child support in the state court. Although the state court's docket sheet shows that Petitioner was served with citation on December 14, 2017, he alleges that he did not receive notice and failed to attend the hearing on the motion to enforce as a result. An arrest warrant was issued based on his failure to appear, and he was arrested on February 15, 2018, and released on bond the following day. On March 8, 2018, Respondent filed a motion to suspend his visitation rights, and Petitioner filed a motion to recuse the state court judge for bias. The motion to recuse was denied on March 27, 2018. Before the motion to suspend was considered by the state court, Petitioner again removed this action to federal district court on April 17, 2018, based on federal question jurisdiction, and as a "civil rights removal" under 28 U.S.C. § 1443. *See Dunn v. Miller*, No. 3:18-CV-967-B (N.D. Tex.) The case was again sua sponte remanded to the state family court for lack of jurisdiction on May 16, 2018. On remand, the state family court entered a temporary restraining order against Petitioner enjoining him from "having possession of or access to his daughter, or even from attending her school-related events" on May 31, 2018.

On June 7, 2018, Petitioner removed this action for a third time under the same jurisdictional basis as his second removal attempt, i.e., based on federal question jurisdiction, and as a "civil rights removal" under 28 U.S.C. § 1443. On that same day, a hearing on temporary orders was set at 9:00 a.m. in the state family court. Though he alleges that he notified the state court and informed Respondent's lawyer about the removal "[a]t 8:57 a.m." that morning, Petitioner did not appear at the hearing and was defaulted by the state court. On June 8, 2018, he filed an "Emergency Motion to Compel" asking this Court to vacate the temporary orders entered in state court as "void."

*Miller v. Dunn*, No. 3:18-cv-1457-B-BH, 2018 WL 3216062, at *1 (N.D. Tex. June 13, 2018) (citations omitted), *rec. accepted*, 2018 WL 3207417 (N.D. Tex. June 29, 2018) (remanding action to state court), *appeal dismissed as frivolous*, 2018 WL 7046625 (5th Cir. Nov. 21, 2018), *cert. denied*, 139 S. Ct. 1342, *reh'g denied*, 139 S. Ct. 1650 (2019).

Against this background, Miller summarizes his allegations in this case:

Within the proceedings of still-pending case # DF-13-02616 in the 330th Family District Court, Dallas County, Texas, and in several related appeals, Plaintiff Miller duly advised the state judges, all other named parties, and various third parties, that certain actions and judicial (and pseudo-judicial) events either are now existing, and/or all have been done, in clear, unambiguous violations of basic due process, state law, state procedure, the United States Constitution, federal statutory law, and/or against the relevant rulings held by the several federal Circuit Courts of Appeal and the United States Supreme Court.

Within that same state-court proceeding – and outside of it – Plaintiff has been, and is still being, affirmatively denied basic constitutional rights to at least: (A) freedom of speech and assembly; (B) the right to parent his child; (C) due process; (D) fair and competent tribunals; (E) reasonable notice and opportunity to be heard; (F) fair and lawful use in civil prosecution and defense of relevant and material evidence and of applicable statutory, rule, and case law authorities; and (G) liberty and property protections.

Plaintiff has been continually harassed by the Dallas County courts, related court administration systems and officers, and the other defendants named herein, who have repeatedly violated the Plaintiffs most basic constitutional rights by willfully, knowingly and intentionally conspiring in various commissions of criminal acts against the Plaintiff.

These criminal and abusive acts against the Plaintiff have been orchestrated primarily by Defendant Virginia Talley Dunn; but they have been carried out with the willing cooperation (and often at the instigation) of her attorneys Patricia Rochelle and David Findley, the judges of the 330th Family District Court, and the other Defendants named herein.

Dkt. No. 3, ¶¶ 2-5.

Considering this summary, the April 9 order, in part, set out the following legal

standards,

to the extent that there is subject matter jurisdiction under Section 1331 – and to the extent that Miller challenges final state court decisions – his claims appear to implicate "the *Rooker-Feldman* doctrine" – "a narrow jurisdictional bar ... designed to prevent lower federal courts from exercising jurisdiction over matters that are exclusively reserved for Supreme Court review under 28 U.S.C. § 1257." *Gross v. Dannatt*, 736 F. App'x 493, 494 (5th Cir. 2018) (per curiam) (citing *Lance v.*

*Dennis*, 546 U.S. 459, 464, 463 (2006) (per curiam); citation omitted).

Put differently, federal-court authority to review a state court's judgement lies exclusively with the United States Supreme Court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) ("Because § 1257, as long interpreted, vests authority to review a state court's judgment solely in this Court, the District Courts in *Rooker* and *Feldman* lacked subject-matter jurisdiction." (citations omitted)); *see also Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986) ("Judicial errors committed in state courts are for correction in the state court systems, at the head of which stands the United State Supreme Court."); *Griggs v. Chickasaw Cnty., Miss.*, 930 F.3d 696, 702 (5th Cir. 2019) ("The doctrine 'directs that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments,'" as opposed to attacks on state administrative or legislative proceedings. (quoting *Kam v. Dallas Cnty.*, 756 F. App'x 455, 455 (5th Cir. 2019) (per curiam); emphasis omitted)).

Under this doctrine, a federal district court lacks jurisdiction to consider "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. 280 at 284; *see Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) ("under [*Rooker-Feldman*] a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights" (citing *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923))).

"A plaintiff cannot 'circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief,' if these claims are 'inextricably intertwined with a state judgment.'" *Turner v. Cade*, 354 F. App'x 108, 111 (5th Cir. 2009) (per curiam) (quoting *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994); citation and internal quotation marks omitted).

The United States Court of Appeals for the Fifth Circuit has "held 'that litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits'" and that, moreover, "[t]he only federal recourse for constitutional questions arising in state court proceedings is application for writ of certiorari to the United States Supreme Court." *Id.* (quoting *Hale*, 786 F.2d at 690-91, then citing *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)).

Courts in this circuit have "consistently applied the *Rooker-Feldman* doctrine as a bar to federal jurisdiction over matters related to

family[-law] disputes." *Evans v. Williamson Cnty. Gov't*, No. A-15-CV-436-SS, 2015 WL 4621449, at *4 (W.D. Tex. May 28, 2015) (collecting cases), *rec. accepted*, 2015 WL 4624708 (W.D. Tex. July 31, 2015).

> And, to the extent that there is subject matter jurisdiction under Section 1331 – and to the extent that *Rooker-Feldman* may not apply, as Miller alleges that the state proceedings are still pending, *see* Dkt. No. 3, ¶¶ 2 – abstention under *Younger v. Harris*, 401 U.S. 37, 43-47 (1971), would then appear to apply.

> Under *Younger*, a federal court should abstain from exercising its jurisdiction when to do so would result in the interference in certain, select state proceedings. *Younger* abstention "applies only to three exceptional categories of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and pending civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (quoting, in turn, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)); internal quotation marks omitted); *see also, e.g., Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012) ("[T]here is no doubt that state-court proceedings regarding the welfare of children reflect an important state interest that is plainly within the scope of the doctrine." (citing *Moore v. Sims*, 442 U.S. 415, 423-24 (1979))).

Dkt. No. 8 at 11-14 (citation modified and footnotes and internal quotation marks omitted).

Miller addressed these standards in his May 11 response, explaining in sum that neither *Rooker Feldman* nor *Younger* can apply "because [he] is not challenging a legitimate state court judgment." Dkt. No. 9 at 25.

> This Court's Order of April 9, 2020 suggests that Miller's Complaint might be precluded by established abstention doctrines. However, Miller is not complaining of a legitimate state court ruling, nor is he seeking a modification of any legitimate state court ruling. As Miller has described in great detail, both *supra* and in his Complaint, he is complaining of two spurious "orders" that were issued without jurisdiction – and which were thus not part of any state court proceeding. Because Defendants Plumlee and Diaz were acting without jurisdiction, their signing of the fraudulent "orders" of November 17, 2016 and June 7, 2018 were entirely nonjudicial. Plumlee and Diaz had as much authority to issue

- 8 -

these fraudulent "orders" as a Walmart greeter, a gas station attendant, or a local drug dealer. Thus these documents are not instruments of any legitimate court.

Therefore, Miller's suit is not precluded by the *Rooker-Feldman* doctrine because he is not challenging a state court decision. Rather, he is challenging two fraudulent instruments issued by criminals – who were pretending to be state court judges – in violation of both state and federal law, and in violation of the United States Constitution.

Likewise, the *Younger* doctrine does not apply to Miller's suit because it would not interfere in any pending state court proceeding. The fraudulent "orders" issued without jurisdiction by Defendants Plumlee and Diaz were not part of any state court proceeding, pending or not. They were the illicit products of a criminal conspiracy that took place outside the scope of any official authority and thus outside of any state court case. Miller is not asking for a federal intrusion into a state court case; rather he is asking this federal Court to address criminal acts committed outside the scope of any legitimate state court proceedings – acts which have resulted in severe deprivations of his constitutional rights. Thus a stay under *Younger* is not proper.

Further, as Miller has demonstrated in his Texas Supreme Court appeal (case no. 16-0487), and his subsequent United States Supreme Court appeal (case no. 16-9012) – both of which were denied hearing – there is no effective possibility of redress for state-court constitutional violations within the American court system. Such appeals are routinely and shamefully ignored by higher state courts, and by the United States Supreme Court. Judges like Defendants Plumlee and Diaz routinely and intentionally violate the constitutional rights of citizens because they know they can get away with it. In this case, however, Defendants Plumlee and Diaz have acted without jurisdiction, well in excess of their authority, and they are therefore deprived of immunity. To dismiss this case would send a chilling message that judges who engage in crimes will never face accountability for their actions, whether those actions are protected by immunity or not. A criminal in a black robe is still a criminal; and Due Process requires that all criminals should be held responsible for their crimes. Therefore, this federal civil suit should proceed.

*Id.* at 25-27 (citations and emphases omitted).

First, *Rooker-Feldman* is not an abstention doctrine – it instead "deprives federal courts of subject matter jurisdiction over [a plaintiff's] case." *Bell v. Valdez*, 207 F.3d 657 (table), 2000 WL 122411, at *1 (5th Cir. Jan. 4, 2000) (per curiam). And

Miller, through his response to the Court's show cause order, has made it apparent that, through these proceedings, he seeks to collaterally attack state court judgments that he contends are illegal because (he argues) they were entered without jurisdiction. As such, the Court lacks subject matter jurisdiction over Miller's case under the *Rooker-Feldman* doctrine. *See, e.g., id.* at \*1 ("The *Rooker-Feldman* doctrine has frequently been used to dismiss civil rights complaints that, like [Miller's], are in essence challenges to state court divorce [proceedings]." (collecting cases)); *see also Hill v. Washburne*, 953 F.3d 296, 306 (5th Cir. 2020) (Plaintiff "cites no legal authority … suggesting that we or the district court have power to order the probate court to reconsider its order. He similarly does not explain how such an order from us or the district court would not be an extrajurisdictional 'collateral attack[ ] on' the probate court's proceedings." (quoting *Bell*, 2000 WL 122411, at \*1)); *Jordaan v. Hall*, 275 F. Supp. 2d 778, 789 (N.D. Tex. 2003) ("[T]he complaint is nothing more than a thinly veiled attempt to circumvent the state appellate process and to collaterally attack – in the guise of a federal civil rights action – the validity of a state court divorce decree and other related orders."); *cf. Moore v. Whitman*, 742 F. App'x 829, 832 (5th Cir. 2018) (per curiam) (The "recourse for constitutional violations in the state-court proceedings [is] to seek review from the United States Supreme Court." (footnote omitted)).

### Recommendation

The Court should dismiss this action for lack of subject matter jurisdiction.

A copy of these findings, conclusions, and recommendation shall be served on

all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 31, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE