IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRADLEY B. MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:20-cv-759-E |
| | § | |
| VIRGINIA TALLEY DUNN, ET AL., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Overruling Plaintiff Bradley B. Miller's objections, the Court accepted the magistrate judge's findings, conclusions, and recommendation and entered judgment dismissing this case for lack of subject matter jurisdiction on September 17, 2020. *See* Dkt. Nos. 10, 11, 12, & 13; *Miller v. Dunn*, No. 3:20-cv-759-E-BN, 2020 WL 5608474 (N.D. Tex. Aug. 31, 2020), *rec. accepted*, 2020 WL 5602843 (N.D. Tex. Sept. 17, 2020).

Prior to entry of the findings, conclusions, and recommendation, Mr. Miller responded to the Court's show cause order on subject matter jurisdiction, explaining in sum that neither *Rooker Feldman* nor *Younger* can apply "because [he] is not challenging a legitimate state court judgment":

> This Court's Order of April 9, 2020 suggests that Miller's Complaint might be precluded by established abstention doctrines. However, Miller is not complaining of a legitimate state court ruling, nor is he seeking a modification of any legitimate state court ruling. As Miller has described in great detail, both *supra* and in his Complaint, he is complaining of two spurious "orders" that were issued without jurisdiction—and which were thus not part of any state court proceeding. Because Defendants Plumlee and Diaz were acting without jurisdiction, their signing of the fraudulent "orders" of November 17, 2016 and June 7, 2018 were

> entirely nonjudicial. Plumlee and Diaz had as much authority to issue these fraudulent "orders" as a Walmart greeter, a gas station attendant, or a local drug dealer. Thus these documents are not instruments of any legitimate court.
>
> Therefore, Miller's suit is not precluded by the *Rooker-Feldman* doctrine because he is not challenging a state court decision. Rather, he is challenging two fraudulent instruments issued by criminals—who were pretending to be state court judges—in violation of both state and federal law, and in violation of the United States Constitution.
>
> Likewise, the *Younger* doctrine does not apply to Miller's suit because it would not interfere in any pending state court proceeding. The fraudulent "orders" issued without jurisdiction by Defendants Plumlee and Diaz were not part of any state court proceeding, pending or not. They were the illicit products of a criminal conspiracy that took place outside the scope of any official authority and thus outside of any state court case. Miller is not asking for a federal intrusion into a state court case; rather he is asking this federal Court to address criminal acts committed outside the scope of any legitimate state court proceedings— acts which have resulted in severe deprivations of his constitutional rights. Thus a stay under *Younger* is not proper.
>
> Further, as Miller has demonstrated in his Texas Supreme Court appeal (case no. 16-0487), and his subsequent United States Supreme Court appeal (case no. 16-9012)—both of which were denied hearing— there is no effective possibility of redress for state-court constitutional violations within the American court system. Such appeals are routinely and shamefully ignored by higher state courts, and by the United States Supreme Court. Judges like Defendants Plumlee and Diaz routinely and intentionally violate the constitutional rights of citizens because they know they can get away with it. In this case, however, Defendants Plumlee and Diaz have acted without jurisdiction, well in excess of their authority, and they are therefore deprived of immunity. To dismiss this case would send a chilling message that judges who engage in crimes will never face accountability for their actions, whether those actions are protected by immunity or not. A criminal in a black robe is still a criminal; and Due Process requires that all criminals should be held responsible for their crimes. Therefore, this federal civil suit should proceed.

*Miller*, 2020 WL 5608474, at *4–*5 (quoting Dkt. No. 9 at 25–27) (citations and emphases omitted)).

In his findings, conclusions, and recommendation, the Magistrate Judge addressed Mr. Miller's argument as follows:

> First, *Rooker-Feldman* is not an abstention doctrine—it instead "deprives federal courts of subject matter jurisdiction over [a plaintiff's] case." *Bell v. Valdez*, 207 F.3d 657 (table), 2000 WL 122411, at *1 (5th Cir. Jan. 4, 2000) (per curiam). And Miller, through his response to the Court's show cause order, has made it apparent that, through these proceedings, he seeks to collaterally attack state court judgments that he contends are illegal because (he argues) they were entered without jurisdiction. As such, the Court lacks subject matter jurisdiction over Miller's case under the *Rooker-Feldman* doctrine. *See, e.g., id.* at *1 ("The *Rooker-Feldman* doctrine has frequently been used to dismiss civil rights complaints that, like [Miller's], are in essence challenges to state court divorce [proceedings]." (collecting cases)); *see also Hill v. Washburne*, 953 F.3d 296, 306 (5th Cir. 2020) (Plaintiff "cites no legal authority … suggesting that we or the district court have power to order the probate court to reconsider its order. He similarly does not explain how such an order from us or the district court would not be an extrajurisdictional 'collateral attack[ ] on' the probate court's proceedings." (quoting *Bell*, 2000 WL 122411, at *1)); *Jordaan v. Hall*, 275 F. Supp. 2d 778, 789 (N.D. Tex. 2003) ("[T]he complaint is nothing more than a thinly veiled attempt to circumvent the state appellate process and to collaterally attack—in the guise of a federal civil rights action—the validity of a state court divorce decree and other related orders."); *cf. Moore v. Whitman*, 742 F. App'x 829, 832 (5th Cir. 2018) (per curiam) (The "recourse for constitutional violations in the state-court proceedings [is] to seek review from the United States Supreme Court." (footnote omitted)).

*Miller*, 2020 WL 5608474, at *4–*5.

On October 9, Mr. Miller moved the Court to reconsider its judgment dismissing his case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 59(e), "to correct plain errors." *See* Dkt. No. 14. And, on October 15, he noticed an appeal of the judgment, *see* Dkt. No. 15, moving, the next day, for leave to appeal *in forma pauperis* ("IFP"), *see* Dkt. No. 16.

Mr. Miller's Rule 59(e) motion, timely filed within 28 days of judgment, "'suspends the finality of the original judgment' for purposes of an appeal." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 373, n.10 (1984)). So, at this point, "there is no longer a final judgment to appeal from," and, "[o]nly the disposition of [the Rule 59(e)] motion 'restores th[e] finality' of the original judgment, thus starting the 30-day appeal clock." *Id.* (citations omitted). The Court's "ruling on the Rule 59(e) motion merges with the prior determination, so that the reviewing court takes up only one judgment." *Id.* (citation omitted).

> Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact. *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). A motion under Rule 59 cannot be used to raise arguments or claims "that could, and should, have been made before the judgment issued." *Marseilles Homeowners Condo. Ass'n v. Fidelity Nat. Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008).

*Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012) (per curiam) (footnote omitted). Considering the second and third purposes for Rule 59(e), such motions "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence'" and "'cannot be used to argue a case under a new legal theory.'" *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)).

"While the district court has considerable discretion in deciding whether to reopen a case under Rule 59(e), reconsideration of a judgment after its entry is an

extraordinary remedy that should be used sparingly. [Accordingly,] Rule 59(e) generally favors the denial of motions to alter or amend a judgment." *Sterling v. United States*, No. 3:18-cv-526-D, 2020 WL 2425648, at *2 (N.D. Tex. May 12, 2020) (citations, internal quotation marks, and original brackets omitted).

Mr. Miller urges the Court to amend the judgment under Rule 59(e) to correct three "plain errors": (1) he argues that 42 U.S.C. § 1983 allows the district court to "collaterally review" a state court judgment; (2) he argues that the *Rooker-Feldman* doctrine cannot apply here; and (3) he argues that the magistrate judge's findings, conclusions, and recommendation contain an incorrect characterization of the procedural history leading up to this lawsuit. Dkt. No. 14.

First, as the magistrate judge explained, it is established law that Section 1983 is not a specific delegation to the federal courts that upsets how constitutional determinations are reviewed in the state courts and allows a collateral attack on a state court judgment where, like here, a plaintiff's constitutional claims are "inextricably intertwined" with the state court's rulings against him. *E.g., Reed v. Terrell*, 759 F.2d 472, 473-74 (5th Cir. 1985) ("[T]his Court's review of the record in the instant case reveals that the plaintiffs' suit is 'patently an attempt to collaterally attack the validity of [the state court judgment].' A review of the plaintiffs' pleadings and arguments in the instant case reveals that this suit is 'inextricably intertwined' with the state court's awards against the plaintiffs. Thus, the district court did not err in dismissing the instant suit for want of jurisdiction." (quoting *Almon v. Sandlin*, 603 F.2d 503, 506 (5th Cir. 1979), then *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 483

n.16 (1983); citation omitted)); *see also Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) ("Absent specific law otherwise providing, [the *Rooker-Feldman*] doctrine directs that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments. Constitutional questions arising in state proceedings are to be resolved by the state courts. If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court. The casting of a complaint in the form of a civil rights action cannot circumvent this rule, as absent a specific delegation 'federal district court[s], as court[s] of original jurisdiction, lack[ ] appellate jurisdiction to review, modify, or nullify final order[s] of state court[s].'" (quoting *Kimball v. Fla. Bar*, 632 F.2d 1283, 1284 (5th Cir. 1980); collecting cases; footnotes omitted)).

And, to the extent that Mr. Miller relies on the *ab initio* exception to *Rooker-Feldman*, *see* Dkt. No. 14 at 2,

> which provides that a state-court judgment that is void for want of subject-matter or personal jurisdiction, or that was obtained by fraud, is subject to collateral attack in federal court[, n]either [the United States Court of Appeals for the Fifth Circuit] nor the Supreme Court has endorsed this exception as [Mr. Miller] advocate[s], and the cases that do recognize this exception … indicate that it is presently limited to the bankruptcy context.

*Houston v. Venneta Queen*, 606 F. App'x 725, 733 (5th Cir. 2016) (citing *Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003) ("While a void *ab initio Rooker-Feldman* exception might be appropriate in some bankruptcy cases (apparently the only

situation in which it has been applied) in order to protect the dominant federal role in that specialized area of the law, it has no place here.") (citation omitted); *see also Matter of Cleveland Imaging & Surgical Hosp., L.L.C.*, 690 F. App'x 283, 286 (5th Cir. 2017) (per curiam) (in a bankruptcy appeal, noting that "[t]his court has neither endorsed nor rejected the *ab initio* exception" (citation omitted)).

Mr. Miller next argues that the *Rooker-Feldman* doctrine cannot apply here because his state court case is still pending. Whether any state proceedings were pending was a concern that the magistrate judge raised in the show cause order and which Mr. Miller answered in his response, set out above, through which he clarified that his theory is that "he is complaining of two spurious 'orders' that were issued without jurisdiction—and which were thus not part of any state court proceeding."

First, as a panel of the Fifth Circuit has noted,

> [t]here is disagreement among the circuits as to whether all state proceedings, including appeals, must have concluded before the federal suit is initiated in order for *Rooker-Feldman* to apply. Indeed, this Court has taken inconsistent positions on the matter: In *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986), this Court applied *Rooker-Feldman* to bar a federal suit despite the pendency of an appeal in state court; but in *Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) (per curiam), this Court declined to apply *Rooker-Feldman* because the case was on appeal to a state appellate court, observing that "[*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005),] tells us when a state court judgment is sufficiently final for operation of the *Rooker-Feldman* doctrine: when 'the state proceedings [have] ended.'"
>
> Although *Hale* predated *Exxon*, the split in authority following *Exxon* on the question of finality suggests that that case did not "unequivocally" overrule *Hale. See Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) ("[F]or a Supreme Court decision to change our Circuit's law, it 'must be more than merely illuminating with respect to the case before [the court]' and must 'unequivocally' overrule prior precedent." (second alteration in

> original)). Further, the portion of *Exxon* quoted in *Rowley*—an unpublished opinion with limited precedential value under 5th Circuit Rule 47.5.4—is found not in *Exxon*'s holding but in its description of the *Rooker* and *Feldman* cases, *see Exxon*, 544 U.S. at 291. *Exxon*'s holding refers only to "state-court judgments rendered before the district court proceedings commenced." *Id.* at 284. Accordingly, we appear to be bound by *Hale* pursuant to this Circuit's rule of orderliness. *See Technical Automation Servs. Corp.*, 673 F.3d at 405-07.

*Houston*, 606 F. App'x at 731-32; *see also Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 n.5 (5th Cir. 2017) ("In a case pre-dating *Illinois Central[ Railroad Co. v. Guy*, 682 F.3d 381 (5th Cir. 2012),] we found *Rooker-Feldman* to bar review of a state court judgment when the state court appeal was pending at the time the federal action was filed. *Hale v. Harney*, 786 F.2d 688, 689-91 (5th Cir. 1986). Contrary to Illinois Central's explication of the doctrine, *Hale* suggests that a state court judgment need not be issued by a court of last resort for *Rooker-Feldman* to apply. Because of this apparent tension in our case law, we do not rely on this aspect of the doctrine to resolve the jurisdictional question before us now."). So, considering *Hale*, Mr. Miller has not established a manifest error of law that requires the Court to amend its judgment.

Further, the procedural history applicable to Mr. Miller's state proceedings reflect that he has sought—and has been denied—appellate review at the highest levels. He even said so in his show cause response: "[A]s Miller has demonstrated in his Texas Supreme Court appeal (case no. 16-0487), and his subsequent United States Supreme Court appeal (case no. 16-9012)—both of which were denied hearing—there is no effective possibility of redress for state-court constitutional violations within the American court system."

Mr. Miller, moreover, has made it clear that "he is complaining of two spurious 'orders' that were issued without jurisdiction—and which were thus not part of any state court proceeding," thus, "[u]nder *Hale*, the alleged pendency of additional state-court proceedings is immaterial to the application of *Rooker-Feldman* [because] the federal suit seeks review and rejection of [two] discrete final state-court judgment[s]." *Houston*, 606 F. App'x at 732 (citing *Hale*, 786 F.2d at 691).

Mr. Miller's final argument is that the Court should amend its judgment because he disagrees with how another federal district court characterized a state appellate court ruling—set out in the findings, conclusions, and recommendation to provide the applicable background of this lawsuit. Regardless whether the divorce between Mr. Miller and his ex-wife was agreed or contested is not material to the disposition of this lawsuit. So the judgment need not be corrected to correct a manifest error of fact.

The Court therefore **DENIES** Plaintiff Bradley B. Miller's Rule 59(e) motion and his motion for leave to appeal IFP and, under 28 U.S.C. § 1915(a)(3), **CERTIFIES**, for the reasons explained in the findings, conclusions, and recommendation [Dkt. No. 10] and in this order, that his appeal is not taken in good faith.

But the Court notifies Mr. Miller that he may challenge this finding under *Baugh v. Taylor*, 117 F.3d 197 (5th Cir. 1997), by filing a separate motion to proceed IFP on appeal with the Clerk of the Court, U.S. Court of Appeals for the Fifth Circuit, within 30 days of this order.

**SO ORDERED** this 5th day of November, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE