IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BRADLEY B. MILLER,              §
                                §
              Plaintiff,        §
                                §
V.                              §          No. 3:20-cv-759-E-BN
                                §
VIRGINIA TALLEY DUNN, ET AL.,   §
                                §
              Defendants.       §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

The United States Court of Appeals for the Fifth Circuit reversed the Court's

judgment dismissing this case for lack of jurisdiction under the *Rooker-Feldman*

doctrine because Plaintiff Bradley B. Miller's state case was still on appeal when he

filed this federal action, expressly abrogating its decision in *Hale v. Harney*, 786 F.2d

688 (5th Cir. 1986). *See Miller v. Dunn*, 35 F.4th 1007, 1012 (5th Cir. 2022) ("It is

high time to end this confusion. We conclude that *Hale* is no longer good law after

*Exxon Mobil* and hold that *Rooker-Feldman* is inapplicable where a state appeal is

pending when the federal suit is filed.").

Miller's lawsuit remains referred to the undersigned United States magistrate

judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of

reference from United States District Judge Ada Brown.

In remanding this case to the district court for further proceedings, the Fifth

Circuit "express[ed] no view on other potential jurisdictional or abstention issues

flagged by the magistrate judge in his initial order." *Id.* at 1013; *see* Dkt. No. 8.

Miller also has been allowed to proceed *in forma pauperis* (IFP), *see* Dkt. Nos. 4 & 18, which subjects his claims to screening under 28 U.S.C. § 1915(e).

The IFP statute in part tracks the language of Federal Rule of Civil Procedure 12(b)(6). So the pleading requirements set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply. And, to avoid dismissal under Section 1915(e)(2)(B)(ii), plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

The undersigned enters these findings of fact, conclusions of law, and recommendation that, to the extent and for the reasons set out below, the Court should dismiss the federal claims and relinquish jurisdiction over any remaining state law claims.

## Applicable Background

Virginia Talley Dunn

filed for divorce against Miller in Dallas County state court in February 2013. Bitter divorce and child-custody proceedings led to temporary restraining and gag orders against Miller. Two additional state-court actions followed.

First, in September 2017, the Dallas County Domestic Relations Office filed an enforcement action against Miller after he fell behind on child support payments. After an October 2018 trial, the state judge found Miller could pay child support despite his claimed indigency and held him in contempt, resulting in a sentence of probation, payment of fees and arrearages, and 179 days in jail for each of four counts. The state appellate court affirmed. Miller unsuccessfully petitioned for rehearing *en banc* in April 2020 and sought review in the Texas

Supreme Court in August 2020. *See* Docket, *In re V.I.P.M.*, No. 05-19-00197-CV (Tex. App. – Dallas). Miller claims "the Dallas County court system has become a criminal enterprise."

Second, in March 2018, Dunn sued Miller to modify their child custody arrangement. Miller removed the case to federal district court, which remanded it to state court. In June 2018, Miller again removed the case, this time an hour before a hearing on Dunn's motion for an emergency temporary restraining order. Despite Miller's filing a notice of removal with the state court and personally serving Dunn's attorney, the state court proceeded with the hearing and issued a restraining order that barred Miller from seeing his child. The federal district court later remanded the case. Miller unsuccessfully petitioned the state appellate court for rehearing *en banc* in October 2021 and sought review in the Texas Supreme Court in December 2021. *See* Docket, *Miller v. Dunn*, No. 09-19-00345-CV (Tex. App. – Beaumont). Miller claims the "fraudulent order" was entered without jurisdiction because he had removed the case the federal court.

In March 2020, while his state-court appeals remained pending, Miller filed this *pro se* action in federal court against Dunn, other private individuals, the state judges, his child's school, two police officers, Dallas County, and the City of Dallas under 42 U.S.C. § 1983. He alleged violations of the First, Fourth, Eighth, and Fourteenth Amendments, as well as fraud, conspiracy, neglect, intentional infliction of emotional distress, and malicious prosecution. He sought monetary damages, declarations that Defendants' actions are null and void, and an injunction prohibiting the state judges from issuing future orders that limit his free speech and parental rights.

*Miller*, 35 F.4th at 1008-09 (footnote omitted).

## Discussion

Miller alleges violations of the United States Constitution – the First Amendment, the Fourth Amendment, the Eighth Amendment, and the Fourteenth Amendment – under Section 1983 and, under the Court's supplemental jurisdiction, asserts violations of state law – fraud, negligence, intentional infliction of emotional distress, and malicious prosecution. He also brings a claim titled Conspiracy Against Rights and Conspiracy to Defraud, in which he cites several federal statutes, including 18 U.S.C. §§ 241, 242, and 1349.

So, as alleged, there is federal question jurisdiction under 28 U.S.C. § 1331,

"an independent basis of subject matter jurisdiction" that allows for supplemental

jurisdiction under 28 U.S.C. § 1367. *Atkins v. Propst*, No. 22-10609, 2023 WL

2658852, at *2 (5th Cir. Mar. 28, 2023) (per curiam) (citing *Arena v. Graybar Elec.*

*Co., Inc.*, 669 F.3d 214 (5th Cir. 2012)).

But, as Miller's complaint reveals, his allegations arise in the context of state

family-law proceedings:

> Within the proceedings of still-pending case # DF-13-02616 in the 330th Family District Court, Dallas County, Texas, and in several related appeals, Plaintiff Miller duly advised the state judges, all other named patties, and various third parties, that certain actions and judicial (and pseudo-judicial) events either are now existing, and/or all have been done, in clear, unambiguous violations of basic due process, state law, state procedure, the United States Constitution, federal statutory law, and/or against the relevant rulings held by the several federal Circuit Courts of Appeal and the United States Supreme Court.
>
> Within that same state-court proceeding – and outside of it – Plaintiff has been, and is still being, affirmatively denied basic constitutional rights to at least: (A) freedom of speech and assembly; (B) the right to parent his child; (C) due process; (D) fair and competent tribunals; (E) reasonable notice and opportunity to be heard; (F) fair and lawful use in civil prosecution and defense of relevant and material evidence and of applicable statutory, rule, and case law authorities; and (G) liberty and property protections.
>
> Plaintiff has been continually harassed by the Dallas County courts, related court administration systems and officers, and the other defendants named herein, who have repeatedly violated the Plaintiff's most basic constitutional rights by willfully, knowingly and intentionally conspiring in various commissions of criminal acts against the Plaintiff.
>
> These criminal and abusive acts against the Plaintiff have been orchestrated primarily by Defendant Virginia Talley Dunn; but they have been carried out with the willing cooperation (and often at the instigation) of her attorneys Patricia Rochelle and David Findley, the judges of the 330th Family District Court, and the other Defendants named herein.

Dkt. No. 3, ¶¶ 2-5.

- 4 -

I.      **The Court should not abstain under *Burford v. Sun Oil Co.***

Even where a plaintiff sues under Section 1983 – which provides for

jurisdiction under Section 1331 – and "the domestic-relations exception to diversity

jurisdiction does not apply,"

> federal courts [generally] abstain from adjudicating family-law disputes
> under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943):
>> [E]ven where the elements of the domestic-relations
>> exception are not precisely met, abstention is nonetheless
>> called for under *Burford* ... when a case presents difficult
>> questions of state law bearing on policy problems of
>> substantial public import whose importance transcends
>> the result in the case then at bar.

*Walker v. Walker*, Civ. A. No. 4:20-1204, 2021 WL 3642077, at *3 (S.D. Tex. July 28,

2021) (quoting *Estate of Merkel v. Pollard*, 354 F. App'x 88, 92 (5th Cir. 2009) (per

curiam) (citing, in turn, *Ankenbrandt v. Richards*, 504 U.S. 689, 705-06 (1992))); *see*

*also DuBroff v. DuBroff*, 833 F.2d 557, 561 (5th 1987) ("In *Burford v. Sun Oil Co.*, …

the [United States] Supreme Court established the principle that some cases properly

brought in federal courts should nevertheless be dismissed to the state courts for

resolution because of a concern for comity between sovereigns."); *Begum v. Miner*, 213

F.3d 639 (table), 2000 WL 554953, at *3 (5th Cir. Apr. 20, 2000) ("*Ankenbrandt*

recognized that even though the suit did not fall within the domestic relations

exception, suits 'involving elements of the domestic relationship' might be subject to

*Burford* abstention when they present 'difficult questions of state law bearing on

policy problems of substantial public import whose importance transcends the result

in the case then at bar.'" (citation omitted)).

But, "[a]s a prerequisite to *Burford* abstention, 'timely and adequate state-

court review [must be] available.'" *Merkel*, 354 F. App'x at 93 (quoting *New Orleans Pub. Serv., Inc. v. City Council of New Orleans*, 491 U.S. 350, 361 (1989) (*NOPSI*)).

"The doctrine also requires that, before the court may abstain, the federal court be sitting in equity or otherwise petitioned for discretionary relief." *Id.* (citing *NOPSI*, 491 U.S. at 361; *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996)); *see also Kinder Morgan, Inc. v. Crout*, 814 F. App'x 811, 816 (5th Cir. 2020) (per curiam) ("The Supreme Court has extended the applicability of abstention doctrines to 'all cases in which a federal court is asked to provide some form of discretionary relief.'" (quoting *Quackenbush*, 517 U.S. at 730)).

Both prerequisites are met here.

First, Miller has already utilized the state courts to review issues raised in this lawsuit. *See, e.g.*, *Miller v. Plumlee*, No. 05-21-00431-CV, 2022 WL 1055371 (Tex. App. – Dallas Apr. 8, 2022, pet. denied) ("Because we conclude Miller's claims against Judge Plumlee are barred by judicial immunity, we affirm the trial court's order dismissing Miller's suit."), *cert. dismissed*, 146 S. Ct. 1046 (2023) ("As petitioner has repeatedly abused this Court's process, the Clerk is directed not to accept any further petition in noncriminal matters from petitioner unless the docketing fee required by Rule 38(a) is paid and petition submitted in compliance with Rule 33.1." (citation omitted)).

And Miller petitions the Court for a declaratory judgment as to each defendant, citing 28 U.S.C. §§ 2201 and 2202. *See* Dkt. No. 3 at 115-25. "Such judgments are considered discretionary relief." *Merkel*, 354 F. App'x at 93 (citing *Quackenbush*, 517

U.S. at 719).

> If, as they are here, these prerequisites are met, "a federal court ... must decline to interfere ... : (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'"

*Id.* (quoting *NOPSI*, 491 U.S. at 361 (quoting, in turn, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976))).

> And courts in the Fifth Circuit consider
>
> five factors to determine whether *Burford* abstention is appropriate: "(1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review."

*Id.* at 94 (quoting *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 272 (5th Cir. 2009)).

While Miller alleges violations of the federal constitution and Texas law, "*Burford* abstention does not so much turn on whether the plaintiff's cause of action is alleged under federal or state law, as it does on whether the plaintiff's claim may be in any way entangled in a skein of state law that must be untangled before the federal case can proceed." *Merkel*, 354 F. App'x at 94 (quoting *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997)).

Applying this standard to Miller's federal claims, the undersigned cannot find that those claims necessarily turn on issues of state law. For example, Miller alleges that, "since the outset of [the] divorce suit in 2013," state judges, his ex-wife, and her

lawyers conspired "to deprive Miller of his right to speak without prior restraint and his freedom of movement," in violation of the First Amendment. Dkt. No. 3 at 85. This claim as set out further in the complaint, like Miller's similar federal claims, does not require the Court to first grapple with thorny issues of state law before it can turn to the federal question at issue.

The phrase "entangled in a skein of state law" comes from a Supreme Court decision that found that, because "petitioners assert that respondents have been and are denying them of rights protected by the Fourteenth Amendment," the federal right was not "in any way entangled in a skein of state law that must be untangled before the federal case can proceed," so "[i]t is immaterial whether respondents' conduct is legal or illegal as a matter of state law." *McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187, Cahokia*, 373 U.S. 668, 674 (1963).

And, in the context of family law, examples of federal causes of action that were found to be "entangled in a skein of state law" include an estate's federal quiet-title claim that "turn[ed] entirely on Texas domestic-relations law," *Merkel*, 354 F. App'x at 94, and a federal RICO claim that was "inextricably entangled in state court issues" in part because the money allegedly "used in furtherance of illegal activities was primarily marital property subject to multiple state court orders," *Peterson v. Peterson*, No. 4:18-CV-4837, 2019 WL 8017862, at *5 (S.D. Tex. Oct. 30, 2019), *rec. adopted*, 2020 WL 883224 (S.D. Tex. Feb. 21, 2020).

Similar interwovenness is not present here. And this analysis appears to apply equally to the second factor: unsettled issues of state law.

But the third, fourth, and fifth factors weigh in favor of abstention.

"'[T]he importance of Texas'[s] interest in its own domestic-relations law is obvious.' In fact, 'there is perhaps no state administrative scheme in which federal court intrusions are less appropriate than domestic relations law.'" *Peterson*, 2019 WL 8017862, at *6 (quoting *Pollard*, 354 F. App'x at 94, then *DuBroff*, 833 F.2d at 561). And,

> [a]s to the fourth factor, "Texas obviously needs a coherent domestic-relations policy," *Pollard*, 354 F. App'x at 95, particularly with regard to divorce and property subject to state court orders. As to the fifth factor, "Texas has created 'a special state forum for judicial review' of divorce actions. *See* TEX. GOV. CODE ANN. § 24.601 *et. seq.* (establishing a comprehensive system of family courts). It goes without saying that these courts have the experience and expertise in Texas divorce law that federal courts lack." *Pollard*, 354 F. App'x at 95. "To superimpose the jurisdiction of this Court upon the [state court] would needlessly interfere with the state's administration of its own affairs in an area where the [state court] has particular expertise." *Lawrence v. Cohn*, 932 F. Supp. 564, 579 (S.D.N.Y. 1996) (quotations omitted).

*Id.* (citation modified).

But, even if these factors numerically weigh in favor of abstention, "*Burford* abstention is an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Stratta v. Roe*, 961 F.3d 340, 356 (5th Cir. 2020) (cleaned up).

It "allows a federal court to dismiss a case only if it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 356-57 (cleaned up).

And "[t]he decision to exercise *Burford* abstention must be weighed against federal courts' virtually unflagging obligation to exercise the jurisdiction given them by Congress." *Id.* at 357 (cleaned up).

As will be further shown below, the specifics of this case militate against abstention – the federal claims fail to "present[] difficult questions of state law"; and Miller's federal claims should be dismissed, while jurisdiction over any remaining state law claims should then be relinquished, which would not, particularly at this stage of this proceeding, "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 356-57.

## II.    Miller fails to allege a private cause of action under the provisions of Title 18 of the United States Code that he cites. So any claims based on these provisions should be dismissed.

Miller alleges that all defendants participated in a conspiracy against him, citing provisions of criminal law, including 18 U.S.C. §§ 3, 4, 241, 242, 1341, and 1349. *See* Dkt. No. 3 at 105-10.

"[D]ecisions whether to prosecute or file criminal charges are generally within the prosecutor's discretion, [so], as a private citizen, [Miller] has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute." *Gill v. State of Tex.*, 153 F. App'x 261, 262-63 (5th Cir. 2005) (per curiam) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979)); *see also Lefebure v. D'Aquilla*, 15 F.4th 650, 654 (5th Cir. 2021) (In *Linda R.S.*, "the Court repeatedly emphasized 'the special status of criminal prosecutions in our system.' It is a bedrock principle of our system of government that the decision to prosecute is made, not by judges or crime victims, but by officials in

the executive branch. And so it is not the province of the judiciary to dictate to executive branch officials who shall be subject to investigation or prosecution.… As a result, courts across the country have dutifully enforced this rule in case after case – refusing to hear claims challenging the decision not to investigate or prosecute another person." (collecting cases; citations omitted)).

As such, criminal statutes generally will not create civil liability. *See, e.g.*, *Ennis Transp. Co. Inc. v. Richter*, No. 3:08-cv-2206-B, 2009 WL 464979, at *1 (N.D. Tex. Feb. 24, 2009) ("It is well established that generally there is no private cause of action for the violation of a federal criminal statute, and thus no jurisdiction for federal courts to preside over a suit between private parties when the only federal law allegedly violated is criminal. In rare circumstances, however, where a criminal statute has 'a statutory basis for inferring' the existence of a civil action, violation of a criminal statute may give rise to a private cause of action." (citations omitted)).

And none of the federal criminal statutes invoked by Miller have been found to create civil liability. *See, e.g.*, *Mattes v. Carvajal*, No. 3:20-cv-1917-B-BN, 2020 WL 6586713, at *5 (N.D. Tex. Oct. 2, 2020) ("Sections 241 and 242 of Title 18 are titled Conspiracy Against Rights and Deprivation of Rights Under Color of Law, but '18 U.S.C. §§ 241 and 242 do not provide a basis for civil liability.'" (quoting *Gill*, 153 F. App'x at 262 (citing, in turn, *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960)))), *rec. accepted*, 2020 WL 6583021 (N.D. Tex. Nov. 10, 2020); *Napper v. Anderson, Hensley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636 (5th Cir. 1974) (no private cause of action under the mail- and wire-fraud statutes, 18 U.S.C. §§ 1341

and 1343); *Jordan v. Riggs*, No. 21-cv-11419, 2021 WL 3612293, at *2 (E.D. Mich. July 23, 2021) ("Because 18 U.S.C. § 1349 doesn't provide a private right of action, [the plaintiff's] claim under this criminal statute fails as a matter of law." (quoting *Diaz v. Perez*, No. 16-11860, 2016 WL 6871233, at *5 (D. Mass. Nov. 21, 2016))), *rec. adopted*, 2021 WL 3603366 (E.D. Mich. Aug. 13, 2021); *Reade v. Galvin*, Civ. A. No. 21-10064-FDS, 2021 WL 327474, at *2 (D. Mass. Feb. 1, 2021) ("There is no private right of action under 18 U.S.C. § 4." And "[t]here is no private right of action under 18 U.S.C. § 3." (citations omitted)).

### III.    Both state judges named as defendants are entitled to immunity. And Miller is not entitled to an injunction under Section 1983. So the claims against the judges should be dismissed.

Miller sues Judge Andrea Plumlee, "District Judge of the 330th Family District Court," who "has presided over [his and Dunn's] state-court case since its inception," Dkt. No. 3, ¶ 34, and Associate Judge Danielle Diaz, who is assigned to the 330th District Court, in their individual and official capacities, seeking monetary damages, declarations concerning their past actions, and "[i]njunctive relief prohibiting [each judge] from issuing future rulings or orders that limit [Miller's] freedom of speech and assembly and/or parental rights," *id.* at 5-6 & 115-17.

Starting with the claims against the judges in their individual capacities, "[a] judge generally has absolute immunity from suits for damages." *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221 (5th Cir. 2009) (citing *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991)).

"Judicial immunity is an immunity from suit, not just the ultimate assessment of damages." *Id.* (citing *Mireles*, 502 U.S. at 11 (citing, in turn, *Mitchell v. Forsyth*,

472 U.S. 511, 526 (1985))).

And

> [t]here are only two circumstances under which judicial immunity may be overcome. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11 (citations omitted). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (citations omitted). Allegations of bad faith or malice are not sufficient to overcome judicial immunity. *Id.*

*Id.*; *see also Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001) ("Court [employees] 'have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion.'" (quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. Unit A June 1981))); *Mitchell v. McBryde*, 944 F.2d 229, 230-31 (5th Cir. 1991) ("[T]he judge's law clerk, when assisting the judge in carrying out the former's judicial functions, is likewise entitled to absolute immunity." (citations omitted)).

Miller asserts that he has overcome Plumlee's and Diaz's judicial immunity because they took actions outside their jurisdiction by continuing with state court proceedings even after Miller attempted to halt a proceeding by filing a notice of removal to federal court. For example, he alleges:

> A post-trial order entry hearing was scheduled to take place at 9:00 a.m. on November 17, 2016. Miller filed objections to Plumlee's trial rulings two days prior, but he (correctly) suspected that Plumlee would sign the proposed order as written. Miller then decided to remove his case to federal court.
>
> Immediately prior to the final order entry hearing in the trial court, Miller removed his case to federal court at 8:27 a.m. on November 17, 2016, citing numerous constitutional violations in the state trial court. Miller filed a Notice of Removal in the state court at 8:57 a.m. on that same day. After Miller filed his removal petition, and prior to remand, state trial court District Judge Andrea Plumlee signed –

entirely without jurisdiction – a (void *ab initio*) trial order recording her custody modification ruling. Dunn's attorney, Patricia Rochelle, though served by Miller with the removal documents in the hallway just before the state-court hearing, presented the order to Judge Plumlee anyway. Before walking into the 330th courtroom, Rochelle told Miller, "I'll tell Judge Plumlee you think you have removed the case." Rochelle's office emailed Miller the signed order later that day. Plumlee's holding of a state-court hearing during the pendency of a federal removal and signing an order without jurisdiction violated 28 U.S.C. § 1446. Plumlee's act also clearly violated Miller's Fourteenth Amendment right to due process, as well as his First and other Fourteenth Amendment rights described above.

Dkt. No. 3, ¶¶ 127 & 128; *see also id.*, ¶¶ 160-66, 168, 173, 180, 209, 218, 247-49, 259, 277-78, & 287-88.

But, even accepting that Miller is correct that each notice of removal that he filed under Section 1446(d) divested the state court of jurisdiction over the family law case, so that the state judge's rulings made while the case was in federal court were invalid, "[e]ngaging in invalid actions … and being liable for those actions are distinct circumstances." *Martyak v. McSorley*, No. 06-80155-CIV-ZLOCH, 2007 WL 9701851, at *3 (S.D. Fla. Mar. 20, 2007).

That is, as the Supreme Court held more than 150 years ago, there is a distinction

between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case although upon the correctness of his determination in these particulars the validity of his judgments may depend.

- 14 -

*Bradley v. Fisher*, 80 U.S. 335, 351-52 (1871).

> The reasoning underlying this distinction is clear when it is considered that a state judge's determination of whether or not he or she has been divested of jurisdiction following removal to federal court is itself a judicial act…. [A] judge may not be held liable because the action taken "was in error." One court, in finding that a judge's actions following an improvident removal were in excess of jurisdiction, stated that the language of § 1446(d) divesting a state court of jurisdiction "unless and until the case is remanded" is more in the nature of a stay rather than a total divesting of all jurisdiction. [But w]hile the law makes clear that a state court actually loses jurisdiction over an action following removal thereof, the point made in these cases is well taken in that removal sometimes only temporarily divests a state court judge of jurisdiction. This is particularly so where the removal is improvident, or contrary to law, and will likely be remanded.

*Martyak*, 2007 WL 9701851, at *3 (citations omitted).

Accordingly, regardless of any error by the state judges or that their conduct was in excess of their jurisdiction once a notice of removal was filed, their actions were judicial in nature. And, because Miller does not contest that the state court at issue normally has jurisdiction over the family law matter that he removed multiple times to federal court, both Judge Plumlee and Judge Diaz enjoy absolute immunity.

Next, to the extent that the judges have been sued in an official capacity, "Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities as state actors." *Davis*, 565 F.3d at 228 (citing *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996); *Holloway v. Walker*, 765 F.2d 517, 519 (5th Cir. 1985)).

And Miller may not enjoin them under Section 1983, which "expressly disallows injunctive relief against a judicial officer 'for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or

declaratory relief was unavailable.'" *Hatton v. Combs*, 793 F. App'x 801, 803 (10th Cir. 2019) (quoting 42 U.S.C. § 1983; citing *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) ("Although we have previously said that a plaintiff may obtain an injunction against a state judge under 42 U.S.C. § 1983, those statements were abrogated by the Federal Courts Improvement Act of 1996, which provides that 'injunctive relief [against a judicial officer] shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable,' 42 U.S.C. § 1983." (citations omitted))).

### IV.    Miller's claims against Dunn's lawyers are subject to Texas's doctrine of attorney immunity. So these claims should be dismissed.

Miller sues two attorneys who have represented his ex-wife in the divorce and related state proceedings: Patricia Rochelle and David Findley. *See, e.g.*, Dkt. No. 3, ¶¶ 41 & 127-30.

All of Miller's allegations against Rochelle and Findley are in the context of their representing Dunn in the litigation against Miller. These claims therefore implicate Texas's attorney immunity doctrine, "a 'comprehensive affirmative defense protecting attorneys from liability to non-clients.'" *Elliott v. Tucker*, No. 4:22-cv-135-O-BP, 2022 WL 17722672, at *5 (N.D. Tex. Nov. 29, 2022) (quoting *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015); *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 505 (5th Cir. 2019)), *rec. accepted*, 2022 WL 17718519 (N.D. Tex. Dec. 15, 2022), *appeal dismissed*, 2023 WL 4491758 (5th Cir. Mar. 1, 2023).

"Attorney immunity is true immunity from suit." *Id.* (citing *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 348 (5th Cir. 2016)).

And, because "[i]t is intended to ensure 'loyal, faithful, and aggressive representation by attorneys employed as advocates,'" the defense "applies to all 'actions taken in connection with representing a client in litigation,' even wrongful conduct that is 'part of the discharge of the lawyer's duties in representing his or her client,' as long as it is not 'entirely foreign to the duties of an attorney.'" *Id.* (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App. – Dallas 2000, pet. denied), then *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 767 (5th Cir. 2019)).

"Texas courts occasionally grant attorney immunity 'at the motion to dismiss stage [where] the scope of the attorney's representation – and thus entitlement to the immunity – [i]s apparent on the face of the complaint.'" *Id.* (quoting *Ironshore Europe*, 912 F.2d at 763).

Similarly, federal district courts in this circuit have applied the doctrine to dismiss claims on judicial screening under the IFP statute. *See Balistreri-Amrhein v. Verrilli*, No. 4:16-CV-00112-ALM-CAN, 2016 WL 11191119, at *9 (E.D. Tex. Oct. 7, 2016) ("Because Plaintiffs allege acts committed solely during these attorneys' representation of their respective clients, Texas's doctrine of attorney immunity absolutely bars Plaintiffs' claims. Accordingly, the Court finds that each of Plaintiffs' claims against the Defendant Attorneys and Law Firms should be dismissed pursuant to Section 1915(e)(2)(B)(ii)." (citing *Troice*, 816 F.3d at 345-49)), *rec. adopted*, 2017 WL 726919 (E.D. Tex. Feb. 24, 2017); *see also Payne v. Anthony Scott Law Firm PLLC*, No. 3:22-CV-2926-M-BK, 2023 WL 3587775, at *1-*2 (N.D. Tex. May 5, 2023) (applying the attorney immunity doctrine where, like this lawsuit, the

claims included alleged "violations of [the plaintiff's] First Amendment right to freedom of speech under 42 U.S.C. § 1983" and "an unlawful conspiracy to violate the same" under 18 U.S.C. §§ 241 & 242), *rec. accepted*, 2023 WL 3590686 (N.D. Tex. May 22, 2023).

The undersigned's review of the claims against Rochelle and Findley compel the finding that those claims are barred by Texas's attorney immunity doctrine and should be dismissed with prejudice on this basis alone.

**V.    Miller fails to allege a plausible claim against either Dallas County or the City of Dallas. So the federal claims against both municipalities should be dismissed.**

Miller alleges that the County is liable based on the conduct of Judges Plumlee and Diaz. *See, e.g.*, Dkt. No. 3, ¶ 223 ("The County is liable under § 1983 for the violation of Plaintiff Miller's rights because the need for more or different judicial training here is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the County can reasonably be said to have been deliberately indifferent to the need. The County's inadequate training and supervision caused, or contributed to causing, Defendants Diaz and Plumlee to intentionally commit acts, acting under color of law, that violated Miller's [constitutional rights]. Repeated violations of individuals' civil rights is the predictable consequence of the County's failure to train judges regarding the Constitutional limitations on punishing the common scenario of allegedly derogatory statements being posted on social media, or made orally or in writing." (citations omitted)).

But Dallas County cannot be liable for the conduct of state judge or an

employee of a state court, since "state judges are elected officials of the State of Texas and are not agents, officials, or employees of the county." *Bloom v. Bexar Cnty., Tex.*, 130 F.3d 722, 725 (5th Cir. 1997) (citing TEX. CONST. art. V, § 7).

Miller alleges a similar theory of liability as against the City, that the City is liable based on the conduct of two police officers, Defendants Darnell and Keller. *See, e.g.*, Dkt. No. 3, ¶ 224 ("The City of Dallas is liable under § 1983 for the violation of Plaintiff Miller's rights because the need for more or different police training here is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the City can reasonably be said to have been deliberately indifferent to the need. Officer Keller and Officer Darnell's conduct is the product of the City's failure to train officers or remedy problems in the face of repeated incidents where the City's officers, agents or both, acting under color of law, intentionally deprived citizens of constitutional rights. (The refusal of the Dallas Police Department to discipline its officers for their actions after a thorough Internal Affairs investigation only serves to emphasize the City's deficiency.) This inaction on the City's part constitutes deliberate indifference to civil rights and rises to the level of a custom or policy.").

The City of Dallas, Texas is a municipality, and "[a] person may sue a municipality that violates his or her constitutional rights 'under color of any statute, ordinance, regulation, custom, or usage.'" *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting 42 U.S.C. § 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

> A plaintiff may proceed on a *Monell* claim only by
>
> identify[ing] "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482; *see also Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 497 & n.11 (5th Cir. 2021) (noting that where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs" (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010))).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting, in turn, *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam) (en banc))).

But, almost without exception, allegations "limited to the events surrounding the plaintiffs" cannot constitute "an allegation of a *de facto* policy." *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015); *see, e.g.*, *id.* at 628 ("Here, the plaintiffs allege there was a retaliatory campaign against them and a retaliatory investigation against the grand jury and its prosecutors, all arising from the same predicate events. The retaliatory campaign against them was publicly known, but they offered no

evidence that similar retaliation had victimized others. There was, in other words, no allegation of a 'widespread practice' of retaliation that is 'so common and well settled' as to constitute the policy of Harris County." (quoting *Webster*, 735 F.2d at 853)).

"Under the second requirement, a plaintiff must show '[a]ctual or constructive knowledge of [a] custom' that is 'attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making authority.'" *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (quoting *Webster*, 735 F.2d at 841). And "a plaintiff must allege 'moving force' causation by showing first, 'that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (quoting *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010)).

"[T]he failure to provide proper training may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). And, although an alleged failure to train (or to supervise) "is a separate theory of municipal liability," "the same standard applies both to a failure to train [or to supervise] claim and to a municipal liability claim." *Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *9 (N.D. Tex. Aug. 25, 2015) (citations omitted).

"The ratification theory provides another way of holding a city liable under § 1983" but only "if the policymaker approves a subordinate's decision and the basis for it, as this 'ratification' renders the subordinate's decision a final decision by the

policymaker." *Allen*, 65 F.4th at 749 (footnote omitted). But "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 849 (citation omitted).

This theory is also "limited to 'extreme factual situations,'" such that conduct may be unconstitutional but "not sufficiently extreme to qualify for a finding of ratification." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395-96 (5th Cir. 2017) (citations omitted)).

Most importantly, regardless the theory of municipal liability, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted); *see also Pinedo*, 2015 WL 5021393, at *5 ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" (quoting *Piotrowski*, 237 F.3d at 582)).

Miller's allegations in support of the City's liability – limited to the incident involving him and the officers – fall short of the specific facts that a complaint must contain to allow a claim against a municipality to proceed beyond the pleading stage.

First, his policy allegations offer boilerplate conclusions, not specific facts. *See Peña*, 879 F.3d at 622; *Pinedo*, 2015 WL 5021393, at *5; *see also Zinter v. Salvaggio*, 610 F. Supp. 3d 919, 961 (W.D. Tex. 2022) ("[P]laintiffs' alleged 'identify, seize, and

- 22 -

arrest' policy falls far short of demonstrating the type of persistent, widespread violations of constitutional rights giving rise to municipal liability. Plaintiffs ask the Court to infer this unwritten policy based on the arrests and detentions in May and June 2018…. [But t]he various arrests and seizures in May and June 2018 do not show a pattern of constitutional violations affecting the whole of Leon Valley." (citations omitted)).

Nor can the single-incident exception apply based on Miller's allegations, where there is no factual basis to infer that either officer was a policymaker for the City. *See Arevalo v. City of Farmers Branch, Tex.*, No. 3:16-cv-1540-D, 2017 WL 5569841, at *4 (N.D. Tex. Nov. 20, 2017) ("A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority." (quoting *Renfro v. City of Kaufman*, 27 F. Supp. 2d 715, 717 (N.D. Tex. 1998) (citing, in turn, *Worsham v. City of Pasadena*, 881 F.2d 1336,1339-40 (5th Cir. 1989)))).

But, even if the Court were to find that there is enough factual content to plausibly allege a policy, *cf. Balle v. Nueces Cnty., Tex.*, 952 F.3d 552, 559 (5th Cir. 2017) ("[P]leadings are sufficient when they make specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force behind municipal employees' [alleged constitutional violations]." (citing *Colle v. Brazos Cnty.*, 981 F.2d 237, 245 (5th Cir. 1993))), the claim against the City fails at *Monell*'s second prong.

- 23 -

Examining this requirement – a policymaker who can be charged with actual or constructive knowledge of the identified official policy or custom – a complaint need "not specifically identify [the municipality's] policymaker," *Balle*, 952 F.3d at 559, because that identity "is a question of state law," and "courts should not ... dismiss § 1983 cases 'for imperfect statement of the legal theory,'" *Groden v. City of Dall., Tex.*, 826 F.3d 280, 284-85 (5th Cir. 2016) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988), then quoting *Johnson*, 574 U.S. at 11).

Instead, the well-pleaded facts must "establish that the challenged policy was promulgated or ratified by the city's policymaker." *Id.* at 285; *see also Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) ("Because the 'specific identity of the policymaker is a legal question that need not be pled,' plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy. In other words, plaintiffs must plead facts that sufficiently connect the policymaker ... to the allegedly unconstitutional policy." (citing *Groden*, 826 F.3d at 284, 286)).

Miller alleges no facts to connect a policymaker to the alleged violations.

But, insofar as Miller's allegation that, "[a]fter an investigation, the DPD declined to discipline the officers involved," Dkt. No. 3, ¶ 95, may invoke a ratification theory of liability against the City, "[s]imply not repudiating [police conduct] does not mean that a policymaker ratifies it. If so, that would cross the line into impermissible

respondeat superior liability for a municipality." *Dobbins v. City of Dall.*, No. 3:20-cv-1727-K, 2021 WL 3781927, at *2 (N.D. Tex. Aug. 25, 2021).

And, as explained above, "the Fifth Circuit has limited the theory of ratification to 'extreme factual situations,' such as officers' killing of the innocent occupant of a truck or their shooting of a fleeing suspect in the back." *Id.* (cleaned up). No similarly "extreme factual situations" are alleged here. *Cf. Winzer v. Kaufman Cnty.*, No. 3:15-cv-1284-N, 2023 WL 2530861, at *7 (N.D. Tex. Mar. 14, 2023) ("The 'extreme factual scenario' exception permitting ratification liability has an 'extremely high' bar. Accordingly, it 'has not enjoyed wide application in this Circuit.'" (citations omitted)).

## VI. Miller's Section 1983 claims concerning the police officers in their individual capacities are facially time barred. So these claims against the officers should be dismissed.

The factual allegations concerning the two Dallas police officers are limited to an incident in April 2015:

> On April 11, 2015, Miller attended a tour of the Dallas Art Fair at the Fashion Industries Gallery building at 1807 Ross Avenue in downtown Dallas…. Miller had been invited by the Yale and Harvard Clubs of Dallas. Both clubs were guests of John Sughrue, a Harvard graduate who also co-founded the Dallas Art Fair. Miller saw Defendants Taylor and Leyendecker at the art fair; they were working in Dunn's booth. Miller did not see Dunn there, and he had no interactions with her. After the tour, Miller was accosted by two Dallas Police Officers, Michael Charles Keller (Badge #9888) and Lacie Darnell (Badge # 10468). The officers indicated that Dunn had told them that Miller had a restraining order against him. The officers called in Miller's driver's license number and established that he did not, in fact, have a restraining order against him. However, they then evicted Miller from the art fair on the basis of Dunn's fraudulent complaint, threatening to charge Miller with criminal trespass if he did not leave. The two officers then escorted Miller out of the building, in full view of the crowd of visitors at the art fair- thus violating his First and Fourth Amendment rights.

Dkt. No. 3, ¶ 93.

Miller's claims against the police officers for violations of the Constitution brought under Section 1983 are governed by Texas's two-year, personal-injury limitations statute. *See Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987); *Shelby v. City of El Paso, Tex.*, 577 F. App'x 327, 331 (5th Cir. 2014) (per curiam).

But courts "determine the accrual date of a § 1983 action by reference to federal law." *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

And "[f]ederal law holds generally that an action accrues when a plaintiff has a complete and present cause of action, or, expressed differently, when the plaintiff can file suit and obtain relief." *Epps*, 550 F.3d at 414 (cleaned up; quoting *Wallace*, 549 U.S. at 388). So "the limitations period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 576).

Based on Miller's allegations, that moment was in April 2015. But Miller did not file this lawsuit until March 2020, almost five years later.

That claims are subject to dismissal based on a statute of limitations is typically an affirmative defense.

But Miller is proceeding IFP, subjecting his claims to judicial screening under Section 1915(e). And, if "'it is clear from the face of [such] a complaint ... that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed' as frivolous." *Wilson v. U.S. Penitentiary Leavenworth*, 450 F.

App'x 397, 399 (5th Cir. 2011) (per curiam) (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993) ("Although the defense of limitations is an affirmative defense, which usually must be raised by the defendants in the district court, this court has held that the district court may raise the defense *sua sponte* in an action proceeding under 28 U.S.C. § 1915. Thus, where it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed pursuant to § 1915[(e)]." (citations omitted))).

That is the case here. The face of the operative complaint makes it clear that the claims against the officers are time barred.

"[A] litigant is entitled to equitable tolling of a statute of limitations" "if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010))

But a plaintiff must "allege specific facts" to support all prongs of "a plausible equitable tolling claim." *Taggart v. Norwest Mortg., Inc.*, Civ. A. No. 09-1281, 2010 WL 114946, at *3 (E.D. Pa. Jan. 11, 2010); *see also Chandra v. Bowhead Sci. & Tech., LLC*, No. 3:16-cv-375-B, 2018 WL 1252097, at *4 (N.D. Tex. Mar. 12, 2018) ("Courts still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. So *pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, and brief arguments on appeal. Chandra's

pleadings fall short of that goal by failing to allege any plausible facts entitling him to equitable tolling." (cleaned up; quoting *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014))). *Cf. Peterson v. United States*, No. 8:18-cv-217-T-17TGW, 2018 WL 1832417, at *2 (M.D. Fla. Feb. 16, 2018) ("The FTCA's limitation period, however, is subject to equitable tolling. The plaintiff does not even mention that it applies. In light of the length of time between the death and the filing of this lawsuit, a claim of equitable tolling would seemingly be implausible and thus frivolous." (citation omitted)), *rec. adopted*, 2018 WL 1832419 (M.D. Fla. Mar. 14, 2018).

Miller fails to allege facts to support either prong of equitable tolling. Nor do Miller's conclusory conspiracy allegations provide a basis to toll the statute of limitations, particularly as to the officer defendants. *Cf. Drayden v. Needville Indep. Sch. Dist.*, 642 F.2d 129, 132 (5th Cir. Unit A Apr. 1981) ("The appellants contend that the running of the statute of limitations was tolled because of an ongoing conspiracy among the defendants in failing to correct the alleged wrongs. This ongoing conspiracy argument of appellants is specious…. The appellants were well aware of the alleged wrong done to them and were not prevented from filing a lawsuit within two years of their discharges."), *abrogated on other grounds by Consol. Rail Corp. v. Darrone*, 465 U.S. 624 (1984).

### VII.    As to the defendants who are neither judges nor police officers, Miller fails to allege requisite state action as to the claimed violations of the Constitution. So the federal claims against these defendants should be dismissed.

"A plaintiff makes out a § 1983 claim [only] if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by

someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

"The traditional definition of acting under color of state law requires that the defendant … have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

And "[p]rivate individuals generally are not considered to act under color of law, but private action may be deemed state action when the defendant's conduct is fairly attributable to the State." *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) (cleaned up; quoting *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005), then *Priester v. Lowndes Cnty.*, 354 F.3d 414, 423 (5th Cir. 2004) (quoting, in turn, *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999))).

As to the named defendants who all private individuals or institutions – Dunn, Miller's ex-wife; Dunn's lawyers: Rochelle and Findley; Maryann Mihalopoulos, a lawyer who was Dunn's successor as Chair of the Board of Trustees of the Hockaday School, a private school in Dallas; the Hockaday School; Meredith Leyendecker and Beth Taylor, Dunn's employees; and Sughrue, *see* Dkt. No. 3, ¶¶ 9, & 12-18 – Miller fails to plead "factual content that allows the court to draw the reasonable inference that [any] defendant is liable" under Section 1983, *Iqbal*, 556 U.S. at 678, by showing that their conduct is fairly attributable to the State.

Starting with Rochelle and Findley, even if they lack attorney immunity, "[t]he

law is clear that a private attorney who merely represents a client in a civil proceeding ... does not act under the color of state law." *Dolenz v. Akin*, No. 3:95-cv-1605-P, 1997 WL 21388, at *3 (N.D. Tex. Jan. 14, 1997) (collecting cases), *aff'd*, 129 F.3d 612 (5th Cir. 1997) (per curiam); *see also Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 679 (5th Cir. 1988) ("[P]rivate attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983.").

But one way a plaintiff may establish that conduct by private actors is fairly attributable to the State is by showing that the private party was "a 'willful participant in joint activity with the State or its agents.'" *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (citations omitted).

To do so, "the plaintiff must allege facts that suggest 'an agreement between the ... defendants to commit an illegal act' and 'an actual deprivation of constitutional rights.'" *Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (quoting *Cinel*, 15 F.3d at 1343); *see also Brinkmann v. Johnston*, 793 F.2d 111, 112-13 (5th Cir. 1986) (per curiam) ("In *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982), we held that 'mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C. § 1983.")).

Miller does assert throughout the complaint that the defendants conspired against him to violate his constitutional rights. *See, e.g.*, Dkt. No. 3, ¶ 4 ("Plaintiff has been continually harassed by the Dallas County courts, related court administration systems and officers, and the other defendants named herein, who have repeatedly violated the Plaintiff's most basic constitutional rights by willfully,

knowingly and intentionally conspiring in various commissions of criminal acts against the Plaintiff."); *id.*, ¶ 82 ("Mihalopoulos did not mention or otherwise disclose that she had instructed Dunn and Rochelle to request a gag order against Miller, in a clear conspiracy to violate Miller's constitutional right to free speech."); *id.*, ¶ 90 ("Miller suspects that [Judge] Ted Akin was hand-picked to issue an unconstitutional ruling against Miller. The very strong circumstantial evidence glaringly suggests a conspiracy among Dunn, Mihalopoulos, [Judge] Slaughter, and [Judge] Akin against Miller on behalf of Hockaday – i.e. to silence Miller's warranted criticism of the Hockaday Board, and to smear his reputation – that should be thoroughly explored in discovery in this suit.").

But, "[a]bsent from the complaint is any sufficiently pled agreement to violate [Miller's] constitutional rights[:] 'A conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.'" *Terwilliger*, 4 F.4th at 285 (quoting *Twombly*, 550 U.S. at 557); *see also Payne*, 2023 WL 3587775, at *4 ("Plaintiff's assertion that Defendants conspired with Judge Jernigan to violate his rights does not demonstrate that Defendants are state actors simply because they filed successful motions against him in the bankruptcy action based on 'false accusations' that he had harassed and defamed Eley. *See Cinel*, 15 F.3d at 1343-44 (stating that simply alleging a conspiracy between state and private actors, without alleging facts that suggest an agreement, is not enough to overcome a Rule 12(b)(6) motion).").

## VIII. The Court should relinquish jurisdiction over the remaining state law claims.

While the undersigned finds that the Court should not abstain under *Burford* from consideration of Miller's claims under federal law, if the Court agrees with the undersigned that those claims should be dismissed for the reasons set out above, *Burford*'s logic further supports relinquishing jurisdiction over any remaining claims arising under state law.

To determine whether it should "relinquish jurisdiction over pendent state law claims," a court looks to "statutory factors set forth by 28 U.S.C. § 1367(c)" – "(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction" – as well as "the common law factors of judicial economy, convenience, fairness, and comity" set forth by *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158-59 (5th Cir. 2011); *see also IntegraNet Physician Res., Inc. v. Texas Indep. Providers, L.L.C.*, 945 F.3d 232, 241-43 (5th Cir. 2019), *overruled on other grounds by Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020) (en banc).

As "no single factor is dispositive," *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008), "[t]he overall balance of the statutory factors is important," *Enochs*, 641 F.3d at 159 (citation omitted).

And another judge of this Court has found "exceptional circumstances for

declining to exercise supplemental jurisdiction over" remaining state law claims based on "'the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts.'" *Janvey v. Harris*, No. 3:09-cv-724-N-BG, 2018 WL 4382970, at *3 (N.D. Tex. Sept. 13, 2018) (quoting *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978); citing *DuBroff*, 833 F.2d at 561-62).

Here too, the balance favors relinquishing jurisdiction over any remaining state law claims, to allow Miller to pursue those claims in a state forum if he so chooses.

## Recommendation

The Court should dismiss all claims arising under federal law and relinquish jurisdiction over any remaining state law claims, dismissing those claims without prejudice, to allow Miller to pursue those claims in a state forum if he so chooses.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 25, 2023

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE