**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

Cause No.:          **3:20-cv-759-E-BN**

| | |
|---|---|
| BRADLEY B. MILLER, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| VIRGINIA TALLEY DUNN, individually; | ) |
| ANDREA PLUMLEE, in both individual and official | ) |
| capacities; DANIELLE DIAZ, in both individual and | ) |
| official capacities; PATRICIA LINEHAN ROCHELLE, | ) |
| in both individual and official capacities; DAVID H. | ) |
| FINDLEY, in both individual and official capacities; | ) |
| MARYANN MIHALOPOULOS (aka MARYANN | ) |
| BROUSSEAU), in both individual and official capacities; | ) |
| THE HOCKADAY SCHOOL, by and through its Board | ) |
| of Trustees; MEREDITH LEYENDECKER, individually; | ) |
| BETH TAYLOR, individually; JOHN SUGHRUE, | ) |
| individually; LACIE DARNELL, in both individual and | ) |
| official capacities;  MICHAEL CHARLES KELLER, in | ) |
| both individual and official capacities; THE COUNTY | )    INJUNCTIVE RELIEF |
| OF DALLAS, Texas; and THE CITY OF DALLAS, Texas | )     REQUESTED |
| | ) |
|    Defendants. | )    JURY TRIAL DEMANDED |

## Plaintiff's Objections to Findings, Conclusions, and Recommendation of the United States Magistrate Judge

Plaintiff Bradley B. Miller files these Objections in response to the Court's

Findings, Conclusions, and Recommendations of September 25, 2023 and October

3, 2023, and in support offers the following:

1

**I. Plaintiff agrees that the Court should not abstain under *Burford*.**

1.      Plaintiff agrees with the Magistrate Judge's conclusion that "The Court should not abstain under *Burford v. Sun Oil Co.* [319 U.S. 315 (1943)]".  Doc.25 at 5.  The fundamental issue in this case is that several individuals violated Miller's rights under the federal Constitution.  Two of these individuals were judges who acted "in the complete absence of all jurisdiction" during the pendency of a Section 1443 federal removal—and thus not in their official judicial capacity.  *Mireles v. Waco*, 502 U.S. 9, 13 (1991).  Further, several of the defendants named herein are not—and have never been—party to, attorneys appearing in, or judges presiding over *any* other case involving Miller, including any family-law case.  Thus abstention under *Burford* is not applicable.

2.      This case primarily raises issues of federal law—NOT state law.  Miller therefore objects Miller objects to the Magistrate Judge's subsequent recommendation that "Miller's federal claims should be dismissed" (Doc.25 at 10) since such a dismissal would violate Miller's Fourteenth Amendment right to Due Process by denying him a statutory federal forum.  *See* 28 U.S. Code § 1331.

**II. Plaintiff objects to the characterization of his suit as a private cause of action under Title 18 of the U.S. Code.**

3.      The Magistrate Judge states that private citizens "may not institute a federal criminal prosecution".  Doc.25 at 10.  Miller objects to the characterization

of his suit as an action under any section of Title 18 of the U.S. Code.

4.       As Miller makes clear in his *Motion for Leave to File First Amended Complaint*, "he is not seeking to enforce criminal statutes, but [rather] his Complain[t] arises from torts that are (naturally) the direct consequence of the Defendants' violation of these criminal statutes."   Doc.26 at 2-3.   Miller also plainly states that "his suit is brought under 42 U.S.C. § 1981, 1983, 1985, and 1986".   *Id.* at 2.   The Magistrate Judge's mischaracterization, however, is a compelling argument for why the Court should grant Miller's motion for leave to amend.  (*See* Doc.26).   Miller's amended complaint clarifies the statutory basis of his suit and eliminates any confusion on this issue.

**III.  Plaintiff objects to the Court's finding that judges are immune from suit.**

5.       The Magistrate judge found that the two judges who are named as Defendants are entitled to immunity.   Doc.25 at 12-16.   However, numerous Supreme Court and federal appellate decisions affirm that judges are absolutely deprived of ALL jurisdiction during the pendency of a Section 1443 removal, and they are also deprived of immunity while acting in the absence of jurisdiction.

6.       Federal civil case removals under 28 U.S.C. § 1443 are governed by 28 U.S.C. § 1446.  28 U.S.C. § 1446(d) dictates that, once a case is removed, the state court case can "proceed no further unless and until the case is remanded," and the

state court loses jurisdiction over the case.  28 U.S.C. § 1446(d); *National Steam-Ship Co. v. Tugman*, 106 U.S. 118, 122 (1882).

7.    Extensive federal and state precedent has determined and affirmed that the filing of the federal and state notices of removal establishes federal jurisdiction, and removes state-court jurisdiction: "Since the adoption of § 1446, it has been uniformly held that the state court loses all jurisdiction to proceed immediately upon the filing of the petition in the federal court and a copy in the state court." *South Carolina v. Moore*, 447 F.2d 1067, 1073 (4th Cir. 1971), citing *Hopson v. North American Insurance Co.*, 71 Idaho 461, 233 P.2d 799; *State ex rel. Gremillion v. NAACP*, La.App., 90 So.2d 884; *Bean v. Clark*, 226 Miss. 892, 85 So.2d 588; *State v. Francis*, 261 N.C. 358, 134 S.E.2d 681; *Schuchman v. State*, Ind., 236 N.E.2d 830; *Adair Pipeline Co. v. Pipeliners Local Union No. 798*, 5 Cir., 325 F.2d 206.  *See also Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, No. 18-921, 2020 WL 871715 (U.S.  Feb. 24, 2020), citing *Kern v. Huidekoper*, 103 U. S. 485, 493 (1881): during removal, the state court "los[es] all jurisdiction over the case, and, being without jurisdiction, its subsequent proceedings and judgment [are] not …simply erroneous, but absolutely void."

The United States Court of Appeals for the Fifth Circuit also reaffirmed the Fourth Circuit's ruling in *Moore*:

> "In *National Steam-Ship Co. v. Tugman*, 106 U.S. 118, 1 S. Ct. 58, 27 L. Ed. 87 (1882), the Supreme Court held that the removal of a case

from state court to federal court ends the power of the state court to act.

Upon the filing, therefore, of the petition (for removal) and bond ... **the jurisdiction of the state court absolutely ceased**, and that of the circuit court immediately attached. The duty of the state court was to proceed no further in the case. **Every order thereafter made in that court was coram non judice, unless its jurisdiction was actually restored.**

106 U.S. at 122, 1 S.Ct. at 60. See *Johnson v. Estelle*, 625 F.2d 75, 77 (5th Cir. 1980) (per curiam); ***South Carolina v. Moore, 447 F.2d 1067, 1073 (4th Cir. 1971)***; *Allman v. Hanley*, 302 F.2d 559, 562 (5th Cir. 1962). **The jurisdiction of the state court is not restored unless and until the federal court remands the case.** *Lowe v. Jacobs*, 243 F.2d 432, 433 (5th Cir. 1957), cert. denied, 355 U.S. 842, 78 S. Ct. 65, 2 L. Ed. 2d 52 (1957). A state court judgment in a case that has been removed may not foreclose further federal proceedings in the removed case and the federal court may enjoin a party from enforcing the state court judgment. *Adair Pipeline Co. v. Pipeliners Local Union No. 798*, 325 F.2d 206 (5th Cir. 1963); *Roach v. First National Bank of Memphis*, 84 F.2d 969 (5th Cir. 1936)." *E. D. Systems Corporation v. Southwestern Bell Telephone Company*, 674 F.2d 453 at §§ 19-21 **(5th Cir. 1982)**. (Emphasis added.)

This 5th Circuit ruling makes it clear that state courts (and judges) judges do not

retain ANY jurisdiction during a Section 1443 removal; the jurisdiction of the state

court (and its judges) ceases "absolutely". *E. D. Systems Corporation* at § 20.

And the Fourth Circuit concurred in a more recent case:

"Because § 1446(d) explicitly states that 'the State court shall proceed no further' once removal is effected, 28 U.S.C. §1446(d), we agree with the Defendants that **the statute deprives the state court of further jurisdiction over the removed case** and that any post-removal actions taken by the state court in the removed case action are void ab initio. See *South Carolina v. Moore*, 447 F.2d 1067, 1072-73 (4th Cir. 1971); accord *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d

5

875, 880 (1st Cir. 1983)." *Kenneth Ackerman v. ExxonMobil Corporation*, 12-1103 at 16 (4th Cir. 2013). (Emphasis added.)

State court jurisdiction stops during a 1443 removal, period.

8.    And without jurisdiction, there is no civil immunity for judges.

9.    Because Defendant Diaz's signing of the June 7, 2018 Temporary Orders was done without jurisdiction, and Defendant Plumlee's signing of the November 17, 2016 post-trial order was done without jurisdiction, neither Diaz nor Plumlee have any immunity whatsoever from civil suit because their acts were not done in their official capacity. Judges are deemed to be "liable to civil actions" for "acts done by them in the clear absence of all jurisdiction over the subject matter." *Bradley v. Fisher*, 80 U.S. 335 at 351 (1871). *See also Stump v. Sparkman*, 435 U.S. 349 at 356-357, 360 (1978). **Further, a judge "is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity," and "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."** *Mireles v. Waco*, 502 U.S. 9 at 11-12 (1991). (Note that, under *Mireles*—contrary to the Magistrate Judge's assertion—it does not matter whether a judge's actions were "judicial in nature". *See* Doc.25 at 15). At the time of both hearings, the judges of 330th Family District Court proceeded while having "clearly no jurisdiction over the subject matter" and with "usurped authority"; thus "no excuse is permissible." *Bradley v. Fisher* at 351-352. Therefore, Judge Diaz has no immunity regarding her signing

of the temporary orders, Judge Plumlee has no immunity regarding her signing of the custody modification suit order, and both are answerable to civil damages under 42 U.S.C. § 1983, 1985, and 1986.

10.    Further, judges are not immune from liability regarding recovery of attorney's fees in suits that seek declaratory and injunctive relief regarding acts "clearly in excess" of their jurisdiction—or even regarding unconstitutional acts done in their judicial capacity. *See* 42 U.S.C. § 1988; *Pulliam v. Allen*, 466 U.S. 522 (1984). Miller's suit, in part, seeks such declaratory and injunctive relief. *See* Doc.3. at 10, 115-117. (Declaratory relief is not available to Miller in any state court, as shown by the dismissal of his suit in the Texas 134th Civil District Court, case no. DC-21-14398, and the affirmation of that dismissal by the Texas 5th District Court of Appeals in case no. 05-22-00090-CV. Thus the *Hatton* and *Knox* prohibition on federal suits for injunctive relief against a judge do not apply. *See Hatton v. Combs*, 793 F. App'x 801, 803 (10th Cir. 2019) (quoting 42 U.S.C. § 1983; citing *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011); Doc.25 at 15-16).

11.    Plumlee and Diaz likewise have no sovereign immunity for their actions. The Texas Supreme Court has ruled that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money."

*City of El Paso v. Heinrich*, 284 S.W.3d 366 at 372 (Tex. 2009).  Miller is of course suing Plumlee and Diaz to force them to comply with the First and Fourteenth Amendments to the United States Constitution, thus the *City of El Paso* ruling applies.  The Texas Supreme Court explained this exception to sovereign immunity: "A state official's illegal or unauthorized actions are not acts of the State.  Accordingly, an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars."  *Id*. at 370, quoting *Federal Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997).  Plumlee and Diaz are not the state; they have issued an illicit "orders" without any legal authority; thus they are also deprived of sovereign immunity.

12.    Finally, the assertion by the U.S. District Court for the Southern District of Florida in the *Martyak* case that the cessation of state court jurisdiction under § 1446(d) is "more in the nature of a stay rather than a total divesting of all jurisdiction" is a legal absurdity that runs contrary to all of the Supreme Court and federal appellate precedent cited above.  *See* Doc.25 at 14; *Martyak v. McSorley*, No. 06-80155-CIV-ZLOCH, 2007 WL 9701851, at *3 (S.D. Fla. Mar. 20, 2007).  As argued extensively *supra*, a Section 1443 / 1446(d) removal absolutely halts state court jurisdiction and is therefore a totally different legal circumstance than a "stay"; and it does not matter one bit if the removal is later decided to be

"improvident" or ineffective.  *See South Carolina v. Moore* at 1072.  The *Martyak* ruling does not override the Supreme Court decisions in *Tugman*, *Bradley*, *Stump*, and *Mireles*, nor the supporting federal appellate rulings in *Moore*, *E. D. Systems Corporation*, and *Ackerman*.  *Martyak* is merely an exercise in wishful thinking.

13.     Generally, the fantasy of judicial immunity has no basis in statutory authority and is entirely unconstitutional under the Equal Treatment Clause of the Fourteenth Amendment.  "No man in this country is so high that he is above the law."  *United States v. Lee*, 106 U.S. 196 at 220 (1882).  That includes judges.

### IV.  Plaintiff objects to the Court's finding that attorneys have immunity from suit.

14.     The Magistrate Judge found that the attorneys named as Defendants have immunity from suit.  Doc. 25 at 16-18.  Plaintiff objects to this finding.

15.     The attorneys named herein, David Findley and Patricia Rochelle, have no immunity for the acts described in Miller's Complaint.  First, as argued above, even judges have no immunity for acts done in "clear absence of all jurisdiction." *Bradley v. Fisher*, at 351; *Stump* at 356-357, 360 (1978).  Further, a judge "is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity," and "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Mireles v. Waco* at 11-12.  Plaintiff Miller alleges that Rochelle, Findley, Plumlee, and Diaz conspired to present and sign fraudulent court documents in a purported court without

9

jurisdiction, thus defrauding Miller of money and also his constitutional rights. The judges (Defendants Plumlee and Diaz) have no immunity for these acts—**and nor do attorneys**. The question of attorney immunity for such acts should be viewed through the critical lens of this long-established doctrine of the waiver of judicial immunity for acts done without jurisdiction—as follows.

16.     Attorneys have no immunity for criminal acts that are beyond the scope of client representation (according to the Texas Supreme Court):

> Conversely, attorneys are not protected from liability to non-clients for their actions when they do not qualify as "the kind of conduct in which an attorney engages when discharging his duties to his client." *Dixon Fin. Servs.*, 2008 WL 746548, at *9 ; *see also Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 442 (Tex.App.–Houston [14th Dist.] 2000, pet. denied) (noting that "it is the kind of conduct that is controlling, and not whether that conduct is meritorious or sanctionable"). For example, we have held that an attorney "will not be heard to deny his liability" for the damages caused by his participation in a fraudulent business scheme with his client, as "such acts are entirely foreign to the duties of an attorney." *Poole v. Hous. & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882) ; see also Essex Crane Rental Corp. v. Carter, 371 S.W.3d 366, 382 (Tex.App.–Houston [1st Dist.] 2012, pet. denied) (holding that attorneys were not immune from claims that they knowingly assisted their clients in evading a judgment through a fraudulent transfer). And the courts of appeals have identified examples of attorney conduct that, even if it occurred during a lawsuit, would be actionable because it does not involve the provision of legal services and would thus fall outside the scope of client representation. See, e.g., *Bradt v. West*, 892 S.W.2d 56, 72 (Tex.App.–Houston [1st Dist.] 1994, writ denied) (noting that a claim against an attorney for assaulting opposing counsel during trial would be actionable, as such conduct "is not part of the discharge of an attorney's duties in representing a party"). (*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 482 (Tex. 2015)).

The *Cantey* ruling continues:

> To that end, some courts of appeals have broadly stated that
> attorney immunity does not extend to an attorney's knowing
> participation in fraudulent activities on his client's behalf. E.g.,
> Toles, 113 S.W.3d at 911 ; *Querner v. Rindfuss*, 966 S.W.2d 661,
> 666 (Tex.App.–San Antonio 1998, pet. denied) ("An attorney ... is
> liable if he knowingly commits a fraudulent act or knowingly enters
> into a conspiracy to defraud a third person.")  (*Id*. at 483)

Both Rochelle and Findley were aware that Plaintiff Miller had removed

his case to federal court on November 17, 2016 and June 7, 2018, prior to

their acts of securing signatures from a purported court.  Thus they knew

that the 330th Family District Court had no jurisdiction, and that they were

engaging in fraud, and a conspiracy to commit fraud. The *Cantey* ruling

also states:

> These courts go on to explain that an attorney's participation in
> "independently fraudulent activities" is considered "foreign to the
> duties of an attorney" and is not shielded from liability. Alpert, 178
> S.W.3d at 406 (citing *Likover v. Sunflower Terrace II, Ltd.*, 696
> S.W.2d 468, 472 (Tex.App.–Houston [1st Dist.] 1985, no writ));
> see also *Cunningham v. Tarski*, 365 S.W.3d 179, 192 (Tex.App.–
> Dallas 2012, pet. denied) (holding that there was no genuine issue
> of material fact as to whether the defendant's conduct was "the type
> of fraudulent conduct that is foreign to the duties of an attorney").
> (*Id* at 483).

There can be no doubt that Rochelle's and Findley's securing execution of a

document by deception (a crime of fraud under Texas Penal Code § 32.46) and

then sending that document to Miller and others as if legitimate (a crime of fraud

under TPC § 32.48) is foreign to the duties of an attorney.  As the *Cantey* ruling

concludes, "the defense does not extend to fraudulent conduct that is outside the

scope of an attorney's legal representation of his client." *Id*. at 484.

17.    Subsequent Texas Supreme Court precedent has affirmed the *Cantey*

conclusions regarding the bounds of attorney conduct with regard to immunity.

"Though attorney immunity is broad, it is not limitless." *Youngkin v. Hines*, No.

16–0935 at 10 (Tex. 2018).  More recently, the Texas Supreme Court ruled:

> We have long recognized, however, that attorney immunity is not
> boundless. *See Poole v.Hous. & T.C. Ry. Co.*, 58 Tex. 134 (1882)
> (holding that attorney immunity did not protect actions taken "for
> the purpose and with the intention of consummating [] fraud upon
> [the] appellant").  An attorney is not immune from suit for
> participating in criminal or "independently fraudulent activities"
> that fall outside the scope of the attorney's representation of a
> client. *Cantey Hanger*, 467S.W.3d at 483.  For example, immunity
> does not apply when an attorney participates in a fraudulent
> business scheme with her client or knowingly facilitates a
> fraudulent transfer to help her clients avoid paying a judgment. *Id*.
> at 482.  Immunity also does not apply when an attorney's actions
> do not involve "the provision of legal services"—for example,
> when an attorney assaults opposing counsel. *Id*.  Certainly, there is
> a wide range of criminal conduct that is not within the "scope of
> client representation" and therefore "foreign to the duties of an
> attorney." *Id*. at 483.
>
> (*Bethel v. Quilling*, *et al*., No. 18-0595 at 9-10 (Tex. 2019)).

Certainly an attorney who knowingly engages in criminal conduct—as both

Rochelle and Findley did when securing signatures on purported "orders" when

they were fully aware that the state court had no jurisdiction is outside the scope of

client representation; and Defendants Rochelle and Findley are thus deprived of attorney immunity for these acts.

18.    (Note that all of the federal cases cited in the Magistrate Judge's finding rely on *Cantey v. Hanger*.   *See* Doc.25 at 16-18.   Thus the *Cantey* exceptions to attorney immunity apply to those federal rulings.)

## V.  Plaintiff objects to the Court's finding that no plausible claim has been alleged against the City of Dallas or Dallas County.

19.    The Magistrate judge found that Plaintiff had not alleged a plausible claim against either the City of Dallas or Dallas County.   Doc.25 at 18-25.   Miller objects to these findings.

20.    First, with regard to the assertion that the District Judge (Plumlee) is not an employee of Dallas County, but rather an employee of the state of Texas, that may be true.   *See* Doc.25 at 18-19.   However, the Associate Judge (Defendant Diaz) is not an elected District Judge, but rather an employee of the County whose appointment is authorized by the Commissioners Court of Dallas County.   *See* Tex. Fam. Code § 201.001; Tex. Const. Art. V, Sec. 18.)

21.    Further, in Miller's parallel state court suit (Texas 116th Civil District Court case no. DC-20-15614, *Miller v. Dunn, et al.*) Associate Judge Diaz and Dallas County were both represented by Dallas County District Attorney John Creuzot (and Assistant District Attorneys Earl Nesbitt and Ben Stool).  The Dallas County District Attorney's dual representation of the County and Defendant Diaz

13

is a *de facto* acknowledgement that Diaz is an employee of Dallas County.  Thus the County is responsible for Diaz's conduct under the *respondeat superior* doctrine, and Miller has alleged a cognizable claim against Dallas County.  (330th Family Court District Judge Plumlee was represented by the Texas Attorney General's Office, thus it is clear that the State of Texas made a distinction between its responsibility to Judge Plumlee and its lack of responsibility to Judge Diaz.)

22.    As for the City of Dallas, municipalities are not normally subject to liability for the conduct of their employees **unless** those employees act pursuant to official policy.  *Monell v. Department of Soc. Svcs.*, 436 at 663 n.7, U.S. 658 (1978).  A plaintiff must allege facts sufficient to show that a municipality, through its policymakers, formulated or had constructive knowledge of an official policy that sanctioned or encouraged a deprivation of rights protected by the Constitution. *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).  In this case, Miller brought a complaint of clear constitutional violations to the Dallas Police Department—subjecting the incident to official review—and his complaints were dismissed without further action.  (The Magistrate Judge notes these allegations in his Findings.  *See* Doc.25 at 19).

23.    In *St. Louis v. Praprotnik*, The United States Supreme Court held:

"…when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a

14

> subordinate's decision and the basis for it, their ratification would
> be chargeable to the municipality because their decision is final."
> *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

By reviewing the actions of Defendants Lacie Darnell and Michael Charles Keller, and approving them, the City of Dallas ratified the conduct of these Defendants— their police officers—and established that this conduct was in keeping with the policies and standards of the City and its Police Department, and it would "allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy".   *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (citing *Groden v. City of Dall., Tex.*, 826 F.3d at 284, 286).   The Dallas Police Department and its oversight body had every opportunity to review the actions of their officers—who clearly violated Miller's First Amendment rights—and *still* made no finding of any wrongdoing.   Thus the dismissal of Miller's police complaint qualifies under the "'extreme factual scenario' exception permitting ratification liability" (*Winzer v. Kaufman Cnty.*, No. 3:15-cv-1284-N, 2023 WL 2530861, at *7 (N.D. Tex. Mar. 14, 2023)) and is therefore chargeable to the City of Dallas.

24.    Further, the recent history of the Dallas Police Department has clearly demonstrated that police misconduct has become so common as to represent a municipal policy.  *See Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.

1984).  To name but a few, Tony Timpa was killed at the hands of Dallas Police on

August 10, 2016 after he himself had called police asking for help—and in a

manner that was virtually identical to the death of George Floyd.  In another

notorious case, Dallas Police Officer Amber Guyger shot and killer Botham Jean

on September 6, 2018 after she mistakenly entered his apartment—while she was

engaged in romantic texting with another married officer.  And most recently,

Dallas Police Officer Bryan Riser was fired on March 9, 2021 after being

implicated in a 2017 murder-for-hire plot—yet was allowed to continue serving as

a Dallas Police officer while under investigation from 2019 onward.  In 2001, the

United States District Court for the Southern District of Texas ruled:

> "To demonstrate governmental policy or custom under §1983, a
> plaintiff must at least show: a pattern of similar incidents in which
> citizens were injured and endangered by intentional or negligent
> police misconduct and/or that serious incompetence or misbehavior
> was general or widespread throughout the police force."  *Paz v.*
> *Weir*, 137 F. Supp.2d 782, 799 (S.D. Tex 2001).

It is clear from these incidents that the City of Dallas has knowingly condoned and

supported intentional and/or negligent police misconduct that has repeatedly

injured citizens, and that the consistent support of and failure to discipline this

misconduct rises to the level of City policy.  Thus the City is deprived of sovereign

immunity for the acts complained of in Miller's suit, and it should be held liable

under 42 U.S.C. Section 1983.

**VI.  Plaintiff objects to the Court's finding that his claims against the police officers in their individual capacities are time barred.**

25.    The Magistrate Judge found that the statue of limitations had run for Plaintiff's claims against the two police officers named herein as Defendants, i.e. Lacie Darnell and Michael Charles Keller.  *See* Doc.25 at 25-28.  Miller objects to this finding.

26.    For the acts complained of in Miller's Complaint for which the strict statute of limitations may have run, Miller asserts that the continuing torts doctrine should apply.  The conspiratorial acts by several Defendants—including Plumlee, Diaz, Dunn, Rochelle, Findley, and Hockaday, at least—against the Plaintiff are ongoing; thus the statute of limitations should begin to run from the present day. *See Treanor v. MCI Telecommunication Corp.*, 200 F.3d 570 at 573 (8th Cir. 2000).

27.    Further, the Defendants have kept Miller tied up in constant appellate litigation since 2015 in his effort to regain his constitutional rights. (*See Doc.3* at 13-14, *passim*).  Miller lacked the money, time, and knowledge to file suit until he was finally able to do so in this United States District Court (NDTX) on March 31, 2020.  Given the enormous burden of his other *pro se* legal work, it was not possible for him to file his civil suit any sooner.  (This Court is already aware of Miller's many other court cases.  *See* Doc.8 in NDTX case no. 3:23-CV-1696). Any  reasonable  application  of  the  Due  Process  Clause  of  the  Fourteenth

Amendment would preclude allowing the statue of limitations for tortious acts (including personal injury and conspiracy) to run while one or more conspirators keeps an indigent party involved in litigation resulting from their abusive conduct—thus allowing the other conspirators to escape liability for their tortious acts.  Due to the abusive and illegal conduct of Defendant Dunn and her co-conspirators, **Miller has not seen his own daughter for more than five years**. This deprivation is an egregious violation of Plaintiff's Fourteenth Amendment parental rights; and this circumstance represents the Defendants' unconscionable use of Miller's own child as a human shield to prevent accountability for their illegal and tortious conduct.  It is even more shocking that this unconstitutional campaign of abuse against Plaintiff Miller has been eagerly conducted by at least four state officials—Defendants Plumlee, Diaz, Darnell, and Keller—all of whom took an oath to uphold the laws and Constitution of the United States.

28.    As the Magistrate Judge states: "[A] litigant is entitled to equitable tolling of a statute of limitations" "if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016).  Doc.25 at 27. (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010))".  Doc.25 at 27  It is clear from the many court cases Miller cites in his Complaint that he has been pursuing his rights

18

diligently over many years, from 2013 to the present.  This Court has presided over FOUR of Miller's removal cases from 2016 to 2023, so it is well aware that Miller has been actively defending his rights in court without pause during the timeframe in question.  It is equally clear that the vicious, incessant conspiracy against Miller's rights qualifies as an "extraordinary circumstance" that "stood in his way and prevented timely filing." *Holland v. Florida* at 649.

29.    Thus Miller has met both prongs of equitable tolling under *Holland*, and his claims against the two police officers are not time barred.  Any reasonable application of Due Process requires this conclusion.

### VII.  Plaintiff objects to the Court's finding that he has not alleged requisite state action as to claimed violations of the Constitution.

30.    The Magistrate Judge found that Miller had not alleged requisite state action as to claimed violations of the Constitution.  Doc.25 at 28-31.  Miller objects to his finding.

31.    As the Magistrate Judge also noted, "But one way a plaintiff may establish that conduct by private actors is fairly attributable to the State is by showing that the private party was 'a "willful participant in joint activity with the State or its agents."' *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (citations omitted)."  Doc.25 at 30.  Because Defendants Plumlee and Diaz were literally clothed in their judicial robes (and on their courtroom benches) at the time of their acts of signing the purported "orders" presented by Defendants Rochelle

19

and Findley on November 17, 2016 and June 7, 2018—and otherwise the creation of these fraudulent documents would not have been possible—there can be no doubt that these tortious acts were taken under color of law, and that they occurred in joint activity with the state and its agents. *See United States v. Classic*, 313 U.S. 299, 326 (1941); *McCoy v. Hous. Auth. of New Orleans*, Civ. A. No. 15-398, 2015 WL 9204434, at *8 (E.D. La. Dec. 17, 2015) (footnotes omitted), quoting *In Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

32.    Certainly the fact that—on two (and now three) separate occasions—Miller removed his case from Defendant Plumlee's and Diaz's state court, attorneys Findley and Rochelle obtained a judge's signature on a order while knowing that the state court had no jurisdiction, and then both judges denied Miller's Special Appearance on this issue, shows beyond any reasonable doubt that the attorneys and the state agents were knowingly involved in conspiracy to violate Miller's rights.  These Defendants were all made abundantly aware of each other's actions via Miller's many court filings on that issue, and yet they still refused to acknowledge federal removal statutes.  And Miller's rights were just as clearly violated in the process. *See Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (quoting *Cinel*, 15 F.3d at 1343); *see also Brinkmann v. Johnston*, 793 F.2d 111, 112-13 (5th Cir. 1986) (per curiam); *In Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982).  *See also Halberstam v. Welch*, 705 F.2d 472, 480 (D.C. Cir.

1983): "[A]n agreement between conspirators must generally be inferred from circumstantial evidence revealing a common intent". Miller has made abundant reference to both material facts and circumstantial evidence in support of his claim. *See* Doc.3, *passim*.

33.    Further, the actions of Defendants Rochelle, Findley, Dunn, Plumlee, and Diaz meet civil conspiracy standards: two or more people, the object of rights deprivation, a demonstrated meeting of minds, unlawful constitutional violations, and damages to Miller.   *See Massey v. Armco Steel Co.*, 652 S.W.2d 932 (Tex. 1983) (quoting 15A C.J.S. Conspiracy § 1(2) (1967)).   These Defendants knew they were acting without jurisdiction on November 17, 2016 and June 7, 2018 when they worked together to create the fraudulent "orders"; they knew that the "orders" contained unconstitutional and illegal stipulations, which was their intent; the fact that they engaged in these acts demonstrates a meeting of the minds (especially since Plumlee and Diaz denied Miller's subsequent Special Appearance regarding these "orders"); these "orders" indeed injured Miller's First and Fourteenth Amendment rights—and continue to do so; and Miller has suffered damages as a result.  Damages include the loss of Miller's First Amendment right to free speech and assembly and his Fourteenth Amendment right to parent (and Due Process), as well as Miller's emotional distress and financial harm (i.e. fraud), which are just two of the underlying torts.  Thus both fraud and conspiracy to

commit fraud, as well as civil rights violations and conspiracy to interfere with civil rights, are applicable and well substantiated claims in this case. *See* 42 U.S.C. §§ 1983 and 1985; *Halberstam* at 479.

34.    Beyond that, no state actor or racial discrimination element is required for claims under 42 U.S. Code Section § 1985(3):   "Again, the plain language of the statute does not require either of the elements". *Ariz. Democratic Party v. Ariz. Republican Party*, No. CV-16-03752, 2016 WL 8669978, at *5 n.4 (D. Ariz. Nov. 4, 2016).  *See also Griffin v. Breckenridge*, 403 U.S. 88 (1971): "Section 1985(3) does not require state action but reaches private conspiracies".  (Once again, this is another reason why the Court must grant Miller's *Motion for Leave to File First Amended Complaint*—because Miller's amended Complaint clarifies that he is also suing under 42 U.S. Code Section § 1985.  *See* Doc.26, Doc.26-1.)  Thus Miller has adequately alleged constitutional violations, by both state and private actors.

### VIII.  Plaintiff objects to the Court's finding that it should relinquish jurisdiction over the remaining state law claims.

35.    The Magistrate Judge recommended that the Court relinquish jurisdiction over the remaining state law claims, i.e. because it should also dismiss Miller's federal claims.   Doc.25 at 32-33.   Miller objects to this finding and recommendation.

36.    First, as Miller has argued *supra*, he has adequately demonstrated (numerous) cognizable federal claims.   The federal claims in this case

22

"substantially predominate" over the state claims—which is the exact opposite circumstance of the standard required for dismissal under 28 U.S.C. § 1367(c). Miller's Fourteenth Amendment right to parent and his First Amendment right to freedom of speech have been violated for eight years now. And this has occurred due to several of the Defendants' concomitant violations of 28 U.S. Code Section 1446—a federal statute.

37.    Miller is also entitled to a federal forum for his federal claims under 28 U.S.C. § 1331 for "civil actions arising under the Constitution, laws, or treaties of the United States".

38.    Further, Plaintiff wishes to stress that there is no possibility of redress in any state court. After this Court initially dismissed Miller's suit, he re-filed his suit in the state 116th Civil District Court (case no. DC-20-15614) in order to preserve his rights under the various applicable statutes of limitations. The state court judge, Tonya Parker, dismissed every defendant from Miller's civil suit after perfunctory hearings. Judge Parker never issued findings of fact and conclusions of law, nor did she state any specific grounds for dismissal in her orders. And when she had dismissed the final Defendant (Maryann Mihalopoulos), Judge Parker hand-wrote "This is a is final and appealable order" on Mihalopoulos' order—and her court then failed to send a copy of the order to Miller. Miller only discovered this order roughly a year later when he checked the case docket. It is

Miller's impression that the Texas 116th Civil District Court deliberately withheld this order from Miller so that he would not be able to appeal it.  (Note: This order from the 116th District Court is not legally "final" because it did dispose of all claims, and it did not state that the order was a "final judgment as to all parties and claims."  See *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195, 205 (Tex. 2001).  Yet the case docket reflects that the case is "CLOSED".  It must also be noted that Judge Parker and Defendants Plumlee and Diaz work in the same building and, as Dallas County Judges, undoubtedly know each other.)  So it is clear that Miller has no chance of litigating and defending his constitutional rights and interests in the state court—because it is a "kangaroo court".  *Williams v. United States*, 341 U.S. 97 at 101 (1951).  As there is no hope of achieving Due Process in the state court, this Court must not relinquish its jurisdiction over Miller's suit with regard to either his federal or state claims.

## IX.  Plaintiff objects to the Court's recommendation to dismiss his Motion for Leave to File First Amended Complaint.

39.    The Magistrate Judge recommended that the Court deny Miller's motion for leave to amend his Complaint, largely based on the premise that Miller is not complaining of "animus based on race or class" and thus his motion is "futile".  Doc.27 at 3, 4.  Miller objects to this finding and recommendation.

40.    The Court asserts that claims under Section 1985(2) and 1985(3) require an element of racial animus.  Doc.27 at 5-6.  However, as noted above, the

24

Arizona District Court has ruled that neither a state actor not a claim of racial discrimination is required under Section 1985(3):  "Again, the plain language of the statute does not require either of the elements".  *Ariz. Democratic Party v. Ariz. Republican Party* at *5 n.4.  That ruling is in harmony with the Supreme Court's decision in *Griffin v. Breckenridge* [403 U.S. 88 (1971)]: "Section 1985(3) does not require state action but reaches private conspiracies".  Both of these rulings rejected the requirement of an element that was *not included in the plain language of the statute*.  As the Supreme Court has ruled, in *Connecticut Nat. Bank v. Germain*, 503 U.S. 249 at 253-54 (1992): "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  Section 1985(3) does not contain any mention of race or class; thus any restriction of Section 1985(3) to race-based or class-based complaints is plainly errant.

41.    Clearly there is a conflict between the rulings in *Ariz. Democratic Party v. Ariz. Republican Party* and *Germain*, on the one hand, and the cases cited by the Magistrate Judge in his supplemental FCR on the other.

42.    It is also illuminating to consider the similar language of other Reconstruction-era federal statutes and how the Supreme Court has parsed their meanings.  42 U.S.C. § 1985(3) provides a civil remedy for criminal violations of 18 U.S.C. § 241—which it mirrors.  In *United States v. Price*, the U.S. Supreme

25

Court ruled that 18 U.S.C. § 241 unequivocally included the full scope of rights protected by the Fourteenth Amendment: "…its language embraces *all* of the rights and privileges secured to citizens by *all* of the Constitution and *all* of the laws of the United States." *United States v. Price*, 383 U.S. 787 at 800 (1966).  The *Price* ruling goes on to clarify this holding, as follows:

> The language of § 241 is plain and unlimited. As we have discussed, its language embraces all of the rights and privileges secured to citizens by all of the Constitution and all of the laws of the United States. There is no indication in the language that the sweep of the section is confined to rights that are conferred by or "flow from" the Federal Government, as distinguished from those secured or confirmed or guaranteed by the Constitution. *Id.*

Likewise, the language of Section 1985(3) is also plain and unlimited. Just as the language of Section 241 does not exclude the rights enumerated under the Constitution, the language of Section 1985(3) does not exclude claims that lack racial or class-based animus.

43.    The word "equal" seems to be a sticking point in this debate about the restriction of Section 1985(3) to race-based claims.  *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); Doc.27 at 5-7.  But Section 1981 contains the same word: "full and equal benefit of all laws".  42 U.S.C. § 1981(a).  And in fact Section 1981 does indeed mention race ("white citizens").  *Id.*  Yet in *McDonald v. Santa Fe Trail Transp. Co.*, the Supreme Court ruled that, regarding 42 U.S.C. § 1981, "the statute explicitly applies to 'all persons'", i.e. regardless of race.  *McDonald v.*

*Santa Fe Trail Transp. Co.*, 427 U.S. 273 at 286-289 (1976).  If Section 1981 refers to "all persons", and 18 U.S.C. 241 protects *all* rights, then Section 1985(3) cannot be limited to only claims of racial discrimination—especially when the plain language of the statute says nothing of the sort.  Section 1985 must protect ALL rights of ALL citizens in ALL circumstances.

44.    But because there is tension among these various Supreme Court and other federal rulings, this issue is most likely bound for the Court of Appeals.  Thus, in the interest of Due Process, the Court must grant Miller's motion for leave to amend so that the record on appeal may explicitly reflect the intended nature of his suit.  *See* FRCP 15(a)(2).  In that light, there is nothing "futile" about his amended Complaint, as it could directly affect the success or failure of an appeal.

Respectfully submitted,


/s/ Bradley B. Miller
Bradley B. Miller
5701 Trail Meadow Drive
Dallas, TX  75230
Tel:   (214) 923-9165
Email:   tech@bbmcs.com
*Pro Se Plaintiff*

27

<u>VERIFICATION</u>

I hereby declare, verify, certify and state, pursuant to the penalties of perjury under the laws of the United States, and by the provisions of 28 USC § 1746, that all of the above and foregoing representations are true and correct to the best of my knowledge, information, and belief.

Executed at Dallas, Texas, this ___9th___ day of _____October_____, 2023

/s/ Bradley B. Miller
Bradley B. Miller

<u>CERTIFICATE OF SERVICE</u>

I hereby certify:  that on this ___9th___ day of October, 2023, a true and complete copy of the above complaint has been duly served upon the following via the Court's electronic filing system:

Virginia Talley Dunn
7147 Azalea Lane
Dallas, TX  75230

Hon. Danielle Diaz
330th District Court
600 Commerce Street
Dallas, TX 75202

Hon. Andrea Plumlee
330th District Court
600 Commerce Street
Dallas, TX 75202

Patricia L. Rochelle #13732050
4502 Abbot Ave., #216
Dallas, TX 75201

28

David H. Findley # 24040901
Orsinger Nelson Downing & Anderson LLP
2600 Network Blvd., Ste. 200
Frisco, TX 75034-6010

(*Counsel for The Hockaday School*)
Stuart M. Bumpas # 03340000
Locke Lord LLP
2200 Ross Ave., Ste. 2800
Dallas, TX 75201-6776

Beth Taylor
3219 Saint Croix Dr.
Dallas, TX 75229

Lacie Darnell (#10468)
1400 S. Lamar Street
Dallas, TX 75215

(*Defendant Dallas County*)
(*Dallas County Judge*)
Hon. Clay Jenkins # 10617450
411 Elm Street #250
Dallas, TX 75202

Maryann Mihalopoulos # 03087475
Brousseau Naftis & Massingill, P.C.
3932 Potomac Ave.
Dallas, TX 75205

Meredith Leyendecker
10536 Vinemont St.
Dallas, TX 75218

John Sughrue
4709 Watauga Rd.
Dallas, TX 75209

Michael Charles Keller (#9888)
1400 S. Lamar Street
Dallas, TX 75215

(Defendant *The City of Dallas*)
(*Dallas City Attorney*)
Tammy Palomino # 24037235
Interim City Attorney
1500 Marilla Street
Dallas, TX 75181

/s/ Bradley B. Miller
Bradley B. Miller